STATE OF NEBRASKA, APPELLEE, v. TIMOTHY PIERCE, APPELLANT.

283 N. W. 2d 6

Filed August 21, 1979. No. 42462.

Scott & Kelly, for appellant.

Paul L. Douglas, Attorney General, and Patrick T. O'Brien, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

PER CURIAM.

This is an appeal from a jury conviction of unlawfully delivering a controlled substance, amphetamines, under section 28-4,125, R. R. S. 1943; a finding that defendant was an habitual criminal under the provisions of section 29-2221, R. R. S. 1943; a sentence of 12 years imprisonment in the Nebraska Penal and Correctional Complex; and an overruling of defendant's amended motion for new trial.

Defendant was charged in an amended information, count I, that on or about June 7, 1978, he unlawfully assaulted Kirk Cross with intent to inflict great bodily injury contrary to section 28-413, R. R. S. 1943, and count II, that on the same date he unlawfully and knowingly delivered to Kirk Cross a controlled substance, amphetamines. In addition, each count recited that the defendant, on July 14, 1976, had been convicted of the crime of burglary and sentenced to a term of 18 months, and on the same date had been convicted of the crime of grand larceny and sentenced to a concurrent prison term of 1 year, and

that by reason of such convictions the defendant is deemed to be an habitual criminal.

As indicated, the case was tried to a jury and the State's principal witness was Kirk Cross. He testified he himself had been charged with one or more felony counts relating to controlled substances, and was told by the state patrol that if he were able to set up some drug buys leading to prosecution his felony charges would be dropped. He was wired with a miniature "bugging device" and given $65 to make the purchase.

Cross originally talked to Rick Fisher about 5:30 p.m., on June 7 at a time when Fisher and the defendant were together. Later on in the evening, in the presence of the defendant, Fisher told Cross that the defendant would obtain the drugs. Fisher, Cross, the defendant, and the defendant's younger brother Monty drove around the vicinity of Scottsbluff, Nebraska, for several hours that evening, drinking beer, and at one point, approximately 10:30 p.m., they parked outside Gustav's Stable Club where Cross and Monty Pierce remained in the car and Fisher and the defendant went inside for approximately 1 hour. When the latter two returned to the car, according to the testimony of Cross, defendant handed Cross a package which turned out to be amphetamines. Cross said he had earlier in the evening paid the $65 to the defendant for the drugs. All four of the parties then went to an address within the city where defendant was helping Fisher cut amphetamines contained in a second package. During the course of the evening the radio transmitter was found on the person of Cross and a scuffle ensued involving Fisher, the defendant, and defendant's brother Monty, which was the cause of the filing of the assault charge.

Although the bugging device had not been successfully monitored by law enforcement officers during the negotiations and actual purchase and transfer of

the drugs, nevertheless they were able to hear the fight which was developing and thereupon immediately entered on the premises where all parties were arrested.

Another witness for the State, patrol investigator Jack Robinson, testified, simply corroborating the fact that he had made the promise to Cross to try to get the felony charges dropped against him in return for the drug buy; that he had furnished the money and the radio device. The other State's witness was Janie Strotheide, a chemist, who identified the controlled substance. The State's evidence also disclosed that the packet of amphetamines was found on the person of Cross at the time of his arrest, and that only a small amount of money and marijuana residue was found on the person of the defendant.

Following the conclusion of the State's case a motion for dismissal or a directed verdict on the grounds of insufficient evidence was overruled.

The defendant's case consisted only of the testimony of the defendant himself who denied all involvement in the drug transaction and testified that whatever activities he engaged in in connection with the fight amounted only to self-defensive measures. He also testified to several alleged facts which amounted to a direct attack on the truthfulness of Cross. Defendant admitted he had been convicted of two prior felonies not, however, involving drugs.

On rebuttal the State called defendant's brother, Monty Pierce, who corroborated the State's case to the extent that he recalled he and defendant were driving uptown early that evening and defendant was looking for a guy by the name of Kirk Cross. Although denying he saw any drugs change hands when defendant got back into the car after having been in the Stable Club, Monty did say that later in the evening, at the place where the arrests were made, he heard Cross ask defendant how many drugs he had gotten that evening, and Monty testi-

fied, "He [defendant] said something to the effect, 'Yes, I got one for you and one for Fisher,' or something to that effect."

Defendant's motion for a dismissal or in the alternative for a directed verdict made at the close of all the evidence was again overruled and the case was submitted to the jury on both counts I and II. The jury returned a verdict of not guilty on count I, the assault, but guilty on count II, delivering a controlled substance.

Later, a hearing was held on the charge of defendant's being an habitual criminal. The trial court found defendant had previously been found guilty on a two-count information to breaking and entering and grand larceny, both occurring on the same day, but at different locations. These findings were based on exhibits 1, 2, and 3, the journal, commitment, and the warden's receipt of the defendant at the penal complex. In those proceedings, the evidence revealed that defendant had received sentences of 18 months and 1 year respectively, the same to run concurrently.

Defendant's amended motion for a new trial complained that the verdict was not sustained by sufficient evidence, it was contrary to law, the court erred in overruling certain of defendant's objections to evidentiary questions, there was newly discovered evidence mandating a new trial, and that the exhibits were improperly received at the habitual criminal hearing. The motion was overruled and immediately thereafter defendant was sentenced to a term of 12 years in the Nebraska Penal and Correctional Complex. The maximum sentence under section 28-4,125, R. R. S. 1943, for delivery of amphetamines is 5 years, but with the enhancement provisions of the habitual criminal statute the term is not less than 10 nor more than 60 years. § 29-2221, R. R. S. 1943.

Defendant's assignments of error include the over-

ruling of the motion for new trial in that the verdict was not sustained by sufficient evidence and was contrary to law; the court erred in failing to grant a new trial because of newly discovered evidence; the court erred in not requiring corroboration of the State's witness, a paid informer; and the court erred in finding that the defendant was an habitual criminal.

As far as the insufficiency of the evidence was concerned, a review of the testimony of the witnesses as outlined above reveals that the State did make a prima facie case. Although the witnesses contradicted each other, it was simply a matter of credibility and the jury chose to believe the State's witnesses.

The only error of law raised by defendant in his amended motion for a new trial had to do with the overruling of objections to certain hearsay testimony relating to statements allegedly made by the defendant to his brother Monty. Both of the parties were present at the time of the alleged conversation; they were strictly admissions made by the defendant; and they were clearly admissible as such. § 27-801 (4) (b), R. R. S. 1943.

Defendant's motion for a new trial based on newly discovered evidence consisted first of an affidavit by defendant's attorney that in the preparation for trial he discussed the case with Rick Fisher and was told that Fisher had no knowledge of the alleged transaction between the defendant and Kirk Cross. Also, in an affidavit, Rick Fisher generally states that he was at Gustav's Stable Club on the evening in question with defendant and Kirk Cross; that he had personal knowledge of the drug transaction in question which is of a nature beneficial to the defendant and which tends to exonerate him and discredit the testimony of Kirk Cross; that at the time of filing of the charges the affiant was under criminal investigation charged with six or seven felonies and did not come

forward with the information because his testimony could be used against him; that the felony charges which had been pending against him were dropped in exchange for a plea of guilty to a charge in another county for which he is currently serving a sentence of 2 to 5 years in the Nebraska Penal and Correctional Complex; and that he is willing to make a more complete statement upon assurances of a grant of immunity in the instant case. Nowhere is there any showing of one fact to which Fisher might testify.

In State v. Seger, 191 Neb. 760, 217 N. W. 2d 828 (1974), we said: "The statute, section 29-2103, R. R. S. 1943, specifically provides that where: '* * * it shall be made to appear * * * the defendant * * * has discovered new evidence material to his defense which he could not with reasonable diligence have discovered.' The newly discovered evidence must be competent, material, credible, and which might have changed result of trial and which by the exercise of due diligence could not have been discovered and produced at the trial. * * *

"Moreover, new evidence tendered in support of a motion for a new trial must be so potent that, by strengthening evidence already offered, a new trial would probably result in a different verdict."

Here, mere conclusions rather than evidence have been tendered, and certainly there are no additional facts exhibited which we could say are so potent that if offered a new trial would probably result in a different verdict. The trial court properly denied the motion for a new trial on this basis.

The defendant complains that there was no corroboration of the testimony of the State's cooperating individual, Kirk Cross. Defendant points out that section 28-439, R. S. Supp., 1978, prohibits a conviction based solely on the uncorroborated testimony of the cooperating individual. He admits that the statute was not in effect at the time of his conviction

and the law was not intended to have a retroactive effect, but insists that it does show a legislative recognition that a conviction based solely on the uncorroborated testimony of the cooperating individual does not satisfy the reasonable doubt standard mandated by the Fourteenth Amendment of the United States Constitution. The statute is not applicable here. However, it should be pointed out that Cross' testimony was in fact corroborated by no less than the defendant's own brother, who was with him all evening. Monty Pierce not only testified that he was driving around that evening with his brother, the defendant, and that his brother was looking for Kirk Cross, but also testified that in response to an inquiry by Cross as to how many drugs the defendant had gotten, the defendant replied, "Yes, I got one for you [Cross] and one for Fisher." This certainly would be sufficient corroboration even under the new statute.

Defendant's assignment of error involving the enhancement of his punishment is simply that the trial court erred in finding him to be an habitual criminal. Specifically, he argues that because his two prior offenses were committed on the same date, prosecuted in the same information, and resulted in concurrent sentences, he had not been "twice convicted of a crime, sentenced and committed to prison * * * for terms of not less than one year each" as required by section 29-2221, R. R. S. 1943, in order to be an "habitual criminal."

Although we have not decided this precise question, similar facts were presented in Huffman v. Sigler, 182 Neb. 290, 154 N. W. 2d 459 (1967), i.e., enhancement was based on convictions of breaking and entering, escape from custody, and robbery, with sentencing apparently all on the same date, for terms of 1 year, and 1 year concurrent, and 3 years consecutive. However, the contention made by Huffman in that case, on appeal from a denial of a

writ of habeas corpus, was that the three convictions "will not support his sentence as a habitual criminal because his imprisonment was continuous and, in effect, amounted to one 4-year sentence." In refusing this contention, we said: "The statute provides that 'Whoever has been twice convicted of crime, sentenced and committed to prison' shall be deemed a habitual criminal. § 29-2221, R. R. S. 1943. The defendant was thrice convicted of crime, sentenced and committed to prison. It is of no consequence that the defendant was imprisoned continuously from the start of the 1-year sentences until the end of the 3-year sentence."

It is defendant's position that having approved consecutive sentences as supporting enhancement, it would be an unwarranted extension of the statute's intent and purpose to include two concurrent sentences as being similarly sufficient. He paraphrases from the following language in State v. Losieau, 182 Neb. 367, 154 N. W. 2d 762 (1967), justifying enhancement statutes: "Where the very purpose of the habitual criminal act is to penalize the repetition of criminal conduct * * *." We agree wholeheartedly and reaffirm our holding in that case. That is exactly what the statute says: "(1) Whoever has been twice convicted of crime, sentenced and committed to prison, * * * for terms of not less than one year each, shall, upon conviction of a felony * * * be deemed to be an habitual criminal * * *." § 29-2221, R. R. S. 1943. That statute applies precisely to the defendant.

Defendant contends that in keeping with the purpose of the statute as expressed in State v. Losieau, *supra*, the statute should be interpreted to require that a second offense, in order to support a finding of habitual criminality, must have been committed after the commission and conviction of the first offense. We would agree that such reasoning would be applicable to the principal offense, i.e., the of-

fense for which enhancement is sought must have been committed after conviction and sentencing for the two prior offenses. However, we do not believe that a reading of our statute on its face requires or supports such a holding with regard to the prior offenses themselves.

We are not unmindful of the fact that several jurisdictions, perhaps even a majority, have adopted the position urged by the defendant. The theories which they have used are either that a defendant should receive two separate and independent warnings before being charged as an habitual criminal or that the defendant should have two separate opportunities for the beneficent influence of penal incarceration before giving up on him as an habitual offender. Although somewhat distinguishable because it involved enhancement for a second offense felony similar to our former section 28-512, R. R. S. 1943, second offense petit larceny, the language from Ansell v. Com., 250 S. E. 2d 760 (Va., 1979), nevertheless expresses our philosophy in this case. "We have stated that the purposes of the recidivist statute are to protect society against habitual criminals and to impose further punishment upon them."

Having said that we recognize that very possibly the majority view is contrary to the one adopted by us here today, we think the language of Cox v. State, 255 Ark. 204, 499 S. W. 2d 630 (1973), is particularly appropriate. "We like the logic of the Louisiana Supreme Court in the case of State of Louisiana v. Williams, 77 So. 2d 515." The Arkansas court then went on to explain that in the Williams case, although the trial judge had found that three previous consecutive sentences given in convictions occurring on the same day could only be counted as one previous conviction, the Supreme Court of Louisiana disagreed. The Arkansas court went on to quote further from Williams: " '[T]he argument is made that under multiple offender legislation, which is directed at

recidivism, "The increased penalties for habitual offenders are not intended to follow according to a numerical count of the offender's crimes, but are imposed for his successive failures to rehabilitate himself. The result is that two or more offenses of a contemporaneous nature amount to but one offense." This argument might be effective if addressed to the lawmakers. But with respect to a judicial interpretation of the particular statute under consideration it has no merit.' " See, also, State v. Bomar, 213 Tenn. 487, 376 S. W. 2d 446 (1964).

We likewise like and adopt such logic. We therefore hold that one having been "twice convicted of crime, sentenced and committed to prison" who thereafter commits and is convicted of a third crime, is eligible for the enhanced penalties provided for one "enjoying" the status of an habitual criminal. It makes no difference whether the two prior convictions provided for consecutive sentences, or whether, as here, the defendant was permitted to serve his two terms concurrently, nor that there was no time interval between conviction and commitment for the first offense and commission of the second.

None of the defendant's assignments of error have any merit and the trial court was correct in all respects and its judgment is affirmed.

AFFIRMED.

HASTINGS, J., dissenting.

I am in complete agreement with the majority opinion in every respect except for its finding that defendant is an habitual criminal under section 29-2221, R. R. S. 1943. In my opinion, the Legislature did not intend to nor does the language of its enactment reasonably permit such designation to apply to one whose prior crimes consist of two burglaries committed within minutes of each other, which resulted in the filing of a single information and con-

viction, sentencing, and commitment out of the same court on the same day.

"Recidivist statutes are enacted in an effort to deter and punish incorrigible offenders. * * * They are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment." State v. Conley, 222 N. W. 2d 501 (Iowa, 1974). "It is the *commission* of the second felony after conviction for the first, and the *commission* of the third felony after conviction of the second that is deemed to make the defendant an incorrigible." (Emphasis supplied.) Coleman v. Commonwealth, 276 Ky. 802, 125 S. W. 2d 728 (1939). Finally, "* * * where the sequence of prior convictions is in issue, the rule followed in the majority of jurisdictions is that each successive felony must be committed after the previous felony conviction in order to count towards habitual criminal status." State v. Carlson, 560 P. 2d 26 (Alaska, 1977). See, also, Faull v. State, 178 Wis. 66, 189 N. W. 274 (1922); Washington v. United States, 343 A. 2d 560 (App. D. C., 1975); Hutchinson v. State, 481 S. W. 2d 881 (Tex. Crim. App., 1972); Cooper v. State, 284 N. E. 2d 799 (Ind., 1972); Holst v. Owens, 24 F. 2d 100 (5th Cir., 1928); Karz v. State, 279 So. 2d 383 (Fla. App., 1973); State v. Mitchell, 2 Wash. App. 943, 472 P. 2d 629 (1970); State v. Lohrbach, 217 Kans. 588, 538 P. 2d 678 (1975); Moore v. Coiner, 303 F. Supp. 185 (N. D., W. Va., 1969); Hill v. Boles, 149 W. Va. 779, 143 S. E. 2d 467 (1965); State v. Sanchez, 87 N. M. 256, 531 P. 2d 1229 (1975); Annotation, 24 A. L. R. 2d 1247.

I am authorized to state that Krivosha, C. J., and McCown, J., join in this dissent.