521 A.2d 720

**Santo Louis MONTONE, Jr.**

v.

**STATE of Maryland.**

**No. 74, Sept. Term, 1985.**

Court of Appeals of Maryland.

March 3, 1987.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH *, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned, JJ.

COLE, Judge.

At issue in this case is the propriety of Santo Louis Montone's sentence to life imprisonment without possibility of parole under Maryland's habitual criminal statute. The statute reads in pertinent part: "Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole." Md.Ann.Code art. 27,

---

* Smith, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

§ 643B(b) (1957, 1982 Repl.Vol., 1986 Cum.Supp.). We set forth the entire section in the margin.[1]

Montone was sentenced ostensibly pursuant to § 643B(b) in two separate criminal proceedings in the Circuit Court for Montgomery County. In the first, on March 14, 1983, Montone pled guilty to charges of daytime housebreaking and felony theft. Montone received sentences of life im-

---

1. Section 643B. Mandatory sentences for crimes of violence.

(a) *"Crime of violence"*.—As used in this section, the term "crime of violence" means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; assault with intent to rape; assault with intent to rob; assault with intent to commit a sexual offense in the first degree; and assault with intent to commit a sexual offense in the second degree.

The term "correctional institution" includes Patuxent Institution and a local or regional jail or detention center.

(b) *Mandatory life sentence*.—Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory.

(c) *Third conviction of crime of violence*.—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

(d) *Compliance with Maryland Rules*.—If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

Md.Ann.Code, art. 27, § 643B (1957, 1982 Repl.Vol., 1986 Cum.Supp.).

prisonment without possibility of parole on the housebreaking conviction and fifteen years on the theft conviction. In the second proceeding, on April 6, 1983, the trial judge found Montone guilty on three counts of robbery with a deadly weapon and one count of use of a handgun in the commission of a crime of violence. On May 11, 1983, the trial judge, acting again pursuant to § 643B(b), sentenced Montone on each of these four convictions to concurrent life sentences without possibility of parole.

Montone's cases were consolidated for appeal. The Court of Special Appeals, in an unreported *per curiam* opinion, affirmed his convictions but vacated his sentences. *Montone v. State*, Nos. 689 and 726, September Term, 1983, filed March 1, 1984. The intermediate appellate court found that Montone should not have been sentenced to more than one life term without possibility of parole and remanded the cases for appropriate sentencing. *Id.*

On remand, Montone's sentences for his March 13, 1983 housebreaking and felony theft convictions were reduced to sentences within the statutory limits. Thus, the propriety of these sentences is not before the Court. The judge also reduced three of Montone's concurrent life sentences without possibility of parole for his April 6, 1983 convictions to three concurrent twenty-year sentences. However, the judge left intact Montone's life sentence without possibility of parole on one of his April 6, 1983 armed robbery convictions. This sentence was affirmed by the Court of Special Appeals in an unreported *per curiam* opinion. *Montone v. State*, No. 973, September Term, 1984, filed March 19, 1985. We granted certiorari to determine if Montone's life sentence without possibility of parole was pursuant to § 643B(b).

The facts giving rise to this question are as follows. After Montone's guilty plea to daytime housebreaking and felony theft on March 14, 1983 and after Montone was convicted of three counts of robbery with a deadly weapon and use of a handgun in the commission of a crime of

violence, the State notified Montone that it was seeking imposition of a mandatory life sentence without possibility of parole based on the following prior convictions of violent crimes. The first conviction was on June 14, 1976 for statutory nighttime housebreaking; the second conviction was on June 14, 1977 for statutory daytime housebreaking; the third conviction was on February 13, 1979 for statutory nighttime housebreaking; and the fourth conviction was also on February 13, 1979 for use of a handgun in the commission of a crime of violence. The State's notice did not indicate a term of imprisonment for Montone's 1976 conviction. Thus, the trial court did not consider this conviction as a predicate crime. However, the State did allege that the June 14, 1977 conviction resulted in a term of confinement. For this conviction, Montone was sentenced to a term of six and one-half years, all but eighteen months suspended, and probation for five years. Montone was actually incarcerated on this conviction from March 17, 1977 to May 16, 1978. Montone concedes that this qualifies as his first "term of confinement" under the statute.

However, the major controversy in this case centers around Montone's third and fourth convictions and whether the periods of incarceration incident thereto qualify as separate terms of confinement under the statute. To recapitulate, Montone was tried and convicted on February 13, 1979 for nighttime housebreaking on September 8, 1978 and sentenced to a term of imprisonment from two to seven years. Also on February 13, 1979, Montone was convicted of the use of a handgun in the commission of a felony. He was sentenced to a term of imprisonment of five years to run consecutive to his conviction in the nighttime housebreaking case. However, after Montone had served nineteen months of imprisonment, the trial judge reconsidered the sentences, suspended the execution of the balance of both and placed Montone on concurrent five year periods of

probation.[2] Thus, prior to reconsideration and release on probation, Montone had been incarcerated for nineteen months, September 8, 1978 to April 8, 1980. The State considered this period of imprisonment to be Montone's second term of confinement under the statute.

The third term of confinement relied upon by the State stems from the revocation of the above concurrent probation for which the trial court reduced the unserved part of Montone's consecutive seven- and five-year terms to concurrent terms of eighteen-months imprisonment.

Montone presents three arguments to substantiate his claim that the trial court erred in sentencing him to a mandatory life sentence without possibility of parole: first, he asserts that he does not have "three separate terms of confinement" as required by § 643B(b) because his second and third convictions were not "separate" due to the fact that he committed both crimes before he was convicted of either; second, he maintains that he has not served "three separate terms of confinement" because the period of confinement resulting from his third predicate conviction was wholly concurrent with the "term of confinement" resulting from his second predicate conviction; and third, he argues that he has not served "three separate terms of confinement" that are "a result of three separate convictions" because his last term of confinement was "a result of" a probation violation.

The State responds that as long as three predicate convictions precede the commission of the principal offense, the order in which they occur is irrelevant under § 643B(b). The State also alleges that Montone has served "three separate terms of confinement" because he has served three periods of imprisonment. Thus, our task is clear; we must determine whether Montone has the requisite "sepa-

---

**2.** The record does not reveal, nor can we find any basis for, Judge Mitchell's authority for summoning Montone back into court after committing him to the Department of Corrections to serve his sentence.

rate terms of confinement" and "separate convictions" to bring into play the statute's mandatory life sentence. We conclude that he does not. We explain.

Section 643B(b)[3] is unlike any other habitual offender statute in the country. The Maryland statute requires more than merely "previous" convictions; it requires *separate* convictions. Moreover, the statute's scope is narrowed by the fact that it requires not only that an individual shall have received separate convictions, but that he shall have been sentenced to, and shall have *actually served,* three separate terms of confinement under the jurisdiction of the correctional system. Thus, the picture that emerges is one of a statute specifically designed to identify and target a unique class of people so that they may be permanently exiled from our free society. These are the violent criminals who have been exposed to the correctional system three distinct times, who have refused to conform their conduct to societal standards, and who, instead, have demonstrated violent criminal behavior after each encounter with the correctional system, thus evidencing the futility of any hope for their rehabilitation.

---

**3.** The General Assembly enacted § 643B in 1975. 1975 Md.Laws ch. 253. As originally enacted, § 643B consisted of only subsections (a) and (b). Subsection (c) was not enacted until 1977. 1977 Md.Laws ch. 678.

We find it significant that subsection (b), which was the focal point of § 643B when it was first enacted, remains unamended to date. The fact that subsection (b) has withstood repeated attempts to broaden its scope is evidence of the General Assembly's satisfaction with its current narrow application. *See, e.g.,* 1976 S.B. No. 872, 1976 S.B. No. 873 (which would have reduced the number of predicate convictions under § 643B(b) to two and would have eliminated the confinement requirement therefrom); 1977 H.B. No. 167, 1978 H.B. No. 449, 1979 H.B. No. 661, 1979 S.B. No. 466, 1982 H.B. No. 244, 1982 S.B. No. 62, 1982 S.B. No. 188, 1984 H.B. No. 25, 1986 H.B. No. 60 (which would have reduced both the predicate convictions and terms of confinement required in § 643B(b) to two); 1982 H.B. No. 125, 1983 H.B. No. 145, 1984 H.B. No. 925, 1985 H.B. No. 1584 (would have amended § 643B(b) to parallel the language of § 643B(c) but, instead of requiring that the person shall have "served" one term of confinement, requiring only that the person shall have been "sentenced to" at least one term of confinement).

Only four states aside from Maryland subject an habitual offender to a mandatory sentence of life imprisonment without possibility of parole.[4] More important, however, is the fact that Maryland's habitual offender statute is unique in its method of identifying habitual offenders. The majority of states determine habitual offender status by totalling the offender's previous convictions, regardless of whether the offender has been sentenced to or has served a period of imprisonment therefor.[5] A few states require that, at a minimum, an offender must have been *sentenced* to a term of confinement before a conviction may qualify as a predicate crime for an enhanced sentence.[6] However, only two

---

**4.** The only states we have found to impose a mandatory life sentence without possibility of parole are: Alabama, Ala.Code § 13A–5–9 (1982); Delaware, Del.Code Ann. tit. 11, § 4214 (1979); Louisiana, La.Rev.Stat.Ann. § 15:529.1 (West 1981); and Mississippi; Miss.Code Ann. § 99–19–83 (1972, 1985 Cum.Supp.). Two states impose a mandatory life sentence but allow the individual to remain eligible for parole; Colorado, Colo.Rev.Stat. § 16–13–101 (1986) and South Carolina, S.C.Code Ann. § 17–25–45 (1985).

**5.** Alabama, Ala.Code § 13A–5–9 (1982); Alaska, Alaska Stat. § 12.55.–125 (1985); Arkansas, Ark.Stat.Ann. § 41–1001 (1977, 1985 Cum. Supp.); Colorado, Colo.Rev.Stat. § 16–13–101 (1986); Delaware, Del. Code Ann. tit. 11, § 4214 (1974); District of Columbia, D.C.Code Ann. § 22–104 (1981); Idaho, Idaho Code § 19–2514 (1979); Illinois, Ill. Ann.Stat. ch. 38, § 33B–1 (Smith-Hurd 1977, 1986 Cum.Supp.); Indiana, Ind.Code Ann. § 35–50–2–8 (Burns 1985); Iowa, Iowa Code Ann. § 902.8 (1979); Michigan, Mich.Comp.Laws Ann. § 769.12 (West 1982); Missouri, Mo.Ann.Stat. § 558.016 (Vernon 1979, 1986 Cum. Supp.); Montana, Mont.Code Ann. § 46–18–501 (1985); Nebraska, Neb.Rev.Stat. § 29–2221 (1986); New Jersey, N.J.Stat.Ann. § 2C:44–3 (1982); New Mexico, N.M.Stat.Ann. § 31–18–17 (1983, 1986 Cum. Supp.); North Carolina, N.C.Gen.Stat. § 14–2.2 (1981); North Dakota, N.D.Cent.Code § 12.1–32–09 (1985); Oklahoma, Okla.Stat.Ann. tit. 21 § 51 (West 1983, 1985 Cum.Supp.); South Carolina, S.C.Code Ann. § 17–25–45 (1985); South Dakota, S.D.Codified Laws Ann. § 22–7–8 (1979); Tennessee, Tenn.Code Ann. § 39–1–801 (1982); Texas, Tex.Penal Code Ann. § 12.42 (Vernon 1974–1986 Cum.Supp.); Vermont, Vt.Stat.Ann. tit. 13, § 11 (1974).

**6.** Connecticut, Conn.Gen.Stat.Ann. § 53a–40 (West 1985); Kansas, Kan.Stat.Ann. § 21–4504 (1981, 1985 Supp.); Kentucky, Ky.Rev.Stat. Ann. § 532.080 (Baldwin 1981); Massachusetts, Mass.Ann.Laws ch. 279, § 25 (Michie/Law. Co-op 1980); New Hampshire, N.H.Rev.Stat. Ann. § 651:6 (1974); Ohio, Ohio Rev.Code Ann. § 2929 (Page 1982);

states require, as does Maryland, that an offender shall have *actually served* a "separate term of confinement" as a result of a conviction before that conviction may qualify as a basis for enhanced punishment.[7]

State courts across the country have been asked to construe their respective habitual offender statutes and we find their decisions instructive. A significant number of state courts faced with statutes far less precise than § 643B(b) have concluded that the convictions used as a basis for enhanced punishment, or "predicate convictions," must occur sequentially. Thus, in these jurisdictions, the commission of each predicate crime except the first must follow the offender's conviction for the preceding predicate crime. *State v. Carlson*, 560 P.2d 26 (Alaska 1977); *Hall v. State*, 473 A.2d 352 (Del.1984); *Perry v. Mayo*, 72 So.2d 382 (Fla.1954); *Miller v. State*, 275 Ind. 454, 417 N.E.2d 339 (1981); *State v. Tillman*, 228 N.W.2d 38 (Iowa 1975); *State v. Wilson*, 230 Kan. 287, 634 P.2d 1078 (1981); *Boyd v. Commonwealth*, 521 S.W.2d 84 (Ky.1975), *rev'd on other grounds sub nom. Payne v. Commonwealth*, 656 S.W.2d 719 (Ky.1983); *State v. Ellis*, 214 Neb. 172, 333 N.W.2d 391 (1983), *rev'g State v. Pierce*, 204 Neb. 433, 283 N.W.2d 6 (1979); *State v. Linam*, 93 N.M. 307, 600 P.2d 253 (1979);

---

Rhode Island, R.I.Gen.Laws § 12–19–21 (1981); Utah, Utah Code Ann. § 76–8–1001 (1978); West Virginia, W.Va.Code § 61–11–18 (1984).

**7.** California's habitual offender statute provides that "the court shall impose a separate three-year term for each prior separate prison term served by the defendant." The California statute differs from the Maryland statute, however, in that the California statute explicitly defines a "prior separate prison term:"

(g) A prior separate prison term.... shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison....

Cal.Penal Code § 667.5(g) (West 1970, 1986 Cum.Supp.).

The Mississippi statute also requires that an individual, to be eligible for enhanced sentencing, shall have been "convicted twice previously ... and ... sentenced to and served separate terms of one (1) year or more...." Miss.Code Ann. § 99–19–83 (1972, 1985 Cum.Supp.).

*Rogers v. State,* 168 Tex.Cr.R. 306, 325 S.W.2d 697 (1959); *State v. Boles,* 149 W.Va. 779, 143 S.E.2d 467 (1965). Under the theory of these cases, two convictions obtained on the same day may not each serve as a predicate conviction because the criminal has had no chance to reform between the first conviction and the commission of the offense upon which the second conviction is based.

To illustrate this point we look at *State v. Ellis, supra,* 214 Neb. 172, 333 N.W.2d 391, in which the Supreme Court of Nebraska overruled its decision in *State v. Pierce,* 204 Neb. 433, 283 N.W.2d 6 (1979). In *Pierce,* the court had held that two offenses committed on the same day and for which the defendant received concurrent sentences could both serve as predicate convictions under Nebraska's habitual offender statute.[8] In *Ellis,* the Nebraska court reconsidered its decision in *Pierce* and stated:

[W]e now believe that we were in error in our holding in *State v. Pierce,* and it should be overruled.... " 'Recidivist statutes are enacted in an effort to deter and punish incorrigible offenders.... They are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment.' *State v. Conley,* 222 N.W.2d 501 (Iowa, 1974). 'It is the *commission* of the second felony *after conviction* for the first, and the *commission* of the *third* felony *after conviction* of the second that is deemed to make the defendant an incorrigible.' (Emphasis supplied.) *Coleman v. Commonwealth,* 276 Ky. 802, 125 S.W.2d 728 (1939)."

We believe we should join the majority of jurisdictions in their interpretation of the habitual criminal statute, and now, therefore, declare that in order to warrant the enhancement of the penalty under the Nebraska habitual criminal statute, ... the prior convictions, except the first

---

**8.** The Nebraska statute provided that: "Whoever has been twice convicted of crime, sentenced and committed to prison ... shall be deemed to be an habitual criminal...." Neb.Rev.Stat. § 29–2221.

conviction, must be for offenses committed after each preceding conviction, and all such prior convictions must precede the commission of the principal offense.

*State v. Ellis, supra,* 214 Neb. at 174–76, 333 N.W.2d at 393–94 (quoting *State v. Pierce, supra,* 204 Neb. at 444, 283 N.W.2d at 12 (Hastings, J., dissenting)).

In *Combs v. Commonwealth,* 652 S.W.2d 859 (Ky.1983), the Supreme Court of Kentucky discussed the issue of whether two convictions obtained on the same day may each serve as predicate convictions under Kentucky's habitual offender statute.[9] The court stated:

> The 1974 commentary to the criminal code makes it plain that the intent of the persistent felony offender statute was to restrict its application to persons who have been previously exposed to an institutional rehabilitative effort and that *when an individual has been convicted two times before being exposed to the institutional rehabilitation efforts afforded by a term of imprisonment, the two convictions shall count only as one in persistent felony offender proceedings.* The commentary states that this is another *effort to avoid the label of persistent felony offender for persons who might be rehabilitated through an ordinary term of imprisonment for the offenses most recently committed....*

*Combs v. Commonwealth, supra,* 652 S.W.2d at 861 (emphasis added). *See also Miller v. State, supra,* 417 N.E.2d at 342 (" 'purpose is to prevent an offender ... from being

---

9. The Kentucky statute defines a "persistent felony offender in the first degree" as someone who "stands convicted of a felony after having been convicted of two (2) or more felonies.... provided: (a) That a sentence to a term of imprisonment of one (1) year or more or a sentence to death was imposed therefor;...." Ky.Rev.Stat.Ann. § 532.080(3) (Baldwin 1981).

The Kentucky statute further provides "(4) For the purpose of determining whether a person has two (2) or more previous felony convictions, two (2) or more convictions of crimes for which that person served concurrent or uninterrupted consecutive terms of imprisonment shall be deemed to be only one (1) conviction, unless one (1) of the convictions was for an offense committed while that person was imprisoned." *Id.* § 532.080(4).

sentenced as an habitual offender before he has had an adequate chance to respond affirmatively to the sentences for such convictions' "); *State v. Tillman, supra,* 228 N.W.2d at 41 ("'Recidivist statutes.... are intended to apply to persistent violators who have not responded to the restraining influence of conviction and punishment.' " (quoting *State v. Conley,* 222 N.W.2d 501, 503 (Iowa 1974)).

In *State v. Carlson,* 560 P.2d 26 (Alaska 1977), the Supreme Court of Alaska construed that state's habitual offender statute to require that the predicate convictions thereunder shall have occurred sequentially.[10] The court noted:

[I]t is the accumulation of prior offenses, indicating the defendant has not reformed his behavior, rather than merely the gross number of offenses, which should be determinative of habitual criminal status.

Moreover, there are sound policy reasons for requiring each prior offense and conviction to follow in sequence in order to accumulate under [Alaska's habitual offender statute. Appellant] points out, and the state acknowledges, that when a convicted criminal has not taken advantage of the opportunity to reform and subsequently commits another crime, he may be considered a worse offender than one with no previous convictions. It is then reasonable to subject him to harsher sanctions. However, where, as in the case of [Appellant], two convictions occur on the same day, the opportunity for reformation is afforded to him only once, not twice.

*State v. Carlson, supra,* 560 P.2d at 30.

Most of those courts holding that the sequentiality of the predicate crimes is irrelevant do so after construing their statute as being intended as a punishment vehicle only. *See*

---

**10.** The statute under consideration in *Carlson* provided: "If the person has previously been convicted of two felonies, then he is punishable by imprisonment for not less than the minimum nor more than twice the longest term prescribed herein...." *State v. Carlson, supra,* 560 P.2d at 27 (quoting AS 12.55.050).

*Watson v. State,* 392 So.2d 1274, 1279 (Ala.Crim.App.1980) (purpose of Alabama habitual offender statute is to "prevent repetition and increase of crimes by imposing increased penalties upon repeat offenders"); *Washington v. State,* 273 Ark. 482, 621 S.W.2d 216, 218 (1981) ("Arkansas's ... statute was not designed to act as a deterrent ... but is simply a punitive statute...."); *Gimmy v. People,* 645 P.2d 262, 264 (Colo.1982) (purpose of Colorado statute is "to punish more severely those who show a propensity toward repeated criminal conduct without regard to an opportunity between convictions for the defendant to reform"); *State v. Montague,* 671 P.2d 187, 190 (Utah 1983) ("the fair import of the statutory language suggests that its purpose is to do exactly what it does—make persistent offenders subject to greater sanctions").

■ Clearly, § 643B(b)'s purpose is not merely to punish. To interpret the statute's purpose as such would render the "separate" and "terms of confinement" requirements therein superfluous. If the legislature intended § 643B(b) merely to inflict more severe punishment upon someone who is a persistent offender, the legislature would have enhanced an individual's sentence any time he had previous convictions.[11] Rather, in § 643B(b), the legislature not only requires that before being sentenced as an habitual offender, an individual shall have received three previous convictions, it requires that each conviction shall have been "separate" from the others. Moreover, § 643B(b) requires that the individual shall have actually *served* three separate terms of confinement in a correctional institution. Thus, the legislature's preoccupation with identifying those individuals incapable of rehabilitation and "locking them up and throwing away the key" is manifest. We cannot conclude otherwise.

With this legislative purpose in mind, we shall proceed to construe § 643B(b) in light of the parties' arguments. Mon-

---

11. For illustrations of Maryland's repeat offender statutes intended as punishment vehicles only *see* Md.Ann.Code art. 27, § 36B (1957, 1982 Repl.Vol.); Md.Ann.Code art. 27, § 286 (1957, 1982 Repl.Vol.).

tone argues that his life sentence under § 643B(b) is illegal because he lacks "three separate convictions" within the meaning of the statute. Montone argues that, because his two February 13, 1979 convictions are not "separate" from one another, they may not count as two predicate convictions for purposes of § 643B(b). We agree.

■ Two convictions must be separated by an intervening term of confinement before they may each serve as a predicate conviction for purposes of § 643B(b). This is so for two reasons. First, we would be thwarting the purpose of § 643B(b) if we allowed two convictions to count as two predicate convictions notwithstanding the fact that the individual was deprived of an intervening exposure to the correctional system. The purpose of § 643B(b) is to identify individuals incapable of rehabilitation and lock them up forever. The statute identifies these individuals by requiring that they have served "three separate terms" within the correctional system, followed by three separate opportunities to prove that they have reformed. When an individual receives two convictions without any intervening term of confinement, he has had no opportunity to reform between his first and second convictions. Thus, the second conviction says nothing about that individual's capacity for rehabilitation. Accordingly, this second conviction cannot serve as a predicate conviction under § 643B(b).

Second, § 643B(b) by its terms requires that two convictions shall be separated by a term of confinement before they may qualify as two predicate convictions. Otherwise the two convictions could not result in two *"separate* terms of confinement" as the statute requires.

■ When a sentencing judge is faced with an individual who has been convicted of two crimes of violence without any intervening confinement, he has the option of making the sentences for the two convictions run either concurrently or consecutively. Thus, in neither case would the resulting terms of confinement be "separate." The *Random House Dictionary* (1973) defines "separate" as "detached,

disconnected or disjoined. . . . unconnected; distinct. . . . being or standing apart, . . . . existing or maintained independently. . . . individual or particular." Thus, concurrent sentences or concurrent terms of imprisonment are the antithesis of *"separate* terms of confinement." Moreover, consecutive sentences are also insufficiently "separate" to qualify as more than one predicate term of confinement under § 643B(b). Whichever option the judge chooses to exercise, the sentences for both convictions are served by one continuous confinement within the correctional system.[12] Thus, the legislative requirement that the conviction and confinement for one predicate crime be separate from the other is never achieved.

■ We emphasize the fact that the legislature did not enact § 643B(b) to solve the myriad problems surrounding repeat offenders. The statute is narrowly directed towards repeat offenders of violent crimes who, having been exposed to the correctional system three distinct times, have failed to learn to coexist peacefully with society. The legislature has mandated that, upon their fourth conviction for a crime of violence, these individuals shall receive the harshest penalty short of death that a civilized society may impose—life imprisonment without possibility of parole. The apparent legislative conclusion is that criminals who qualify for punishment under § 643B(b) are incorrigible and beyond rehabilitation.

■ Turning to the facts *sub judice,* we conclude that Montone has had neither the "separate convictions" nor served the "separate terms of confinement" needed to support a mandatory life sentence without possibility of parole under § 643B(b). The first conviction set forth by the State as a basis for Montone's life sentence must be summarily

---

**12.** Whether a term of confinement, resulting from a violent crime committed by the defendant while he is in the custody of the correctional system or an escapee therefrom, is sufficiently separate under the statute to qualify as a predicate crime for enhancing punishment is an issue we leave to another day.

disqualified because it did not result in any "term of confinement." Because Montone was not subjected to any imprisonment under the jurisdiction of the correctional system as a result of this first conviction, it cannot serve as a predicate conviction under § 643B(b).

Montone concedes that the second conviction set forth by the State as a basis for his mandatory life sentence resulted in a term of confinement and, therefore, that it qualifies as a predicate crime for purposes of enhancing punishment.

■ Most important is our conclusion that the second and third convictions set forth by the State as a basis for Montone's mandatory life sentence cannot count as two "separate convictions" within the meaning of the statute. The State alleges that the two convictions obtained on February 13, 1979, can count as two predicate convictions under § 643B(b). Indeed, in Montone's case, each of these convictions *must* count as a predicate conviction in order for him to have had three convictions as the statute requires. However, as we see it, the policy behind the statute requires us to hold that Montone's two February 13, 1979 convictions may not count as two predicate crimes. This is because the crimes were not separated by an exposure to the correctional system. Hence, Montone had no opportunity to reform between the two convictions. Thus, the statutory requirement that, to be "separate," convictions must be interrupted by a period of confinement, is never met.

■ We also conclude that Montone's sentence under § 643B(b) is illegal because he has not served "three separate terms of confinement" as the statute requires. Montone was sentenced to consecutive seven- and five-year terms for his February 13, 1979 convictions. After serving nineteen months under these consecutive sentences, the sentences were suspended and Montone was placed on five years probation. This nineteen months is the second "term

of confinement" set forth by the State as a basis for Montone's mandatory sentence. When Montone violated the terms of his probation, the trial court modified the consecutive seven- and five-year sentences to a balance of eighteen months each, to be served concurrently. The State argues that this is a separate "term of confinement" that the court may consider in enhancing Montone's sentence under § 643B(b). However, this cannot be so. For two terms of confinement to be separate under the statute they must be separated by a predicate conviction. Conversely, for two convictions to qualify as predicate convictions they must be separated by a term of confinement. Here, Montone's sentences for his 1979 convictions were at all times either consecutive to or concurrent with one another. Accordingly, at no time were they "separate."

Simply stated, Montone does not satisfy the terms of § 643B(b) because he has not been convicted of three separate crimes of violence for which he has been sentenced to serve three separate terms of confinement in the correctional system. Accordingly, we vacate the sentence of life imprisonment without possibility of parole.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT TO VACATE THE SENTENCE OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND CASE REMANDED TO THAT COURT FOR RESENTENCING. MONTGOMERY COUNTY TO PAY THE COSTS.*

MURPHY, Chief Judge, concurring in the judgment.

Upon a fourth conviction of a "crime of violence", as that term is defined in § 643B(a) of Art. 27, the court must, under subsection (b), impose a life sentence without the possibility of parole in every case where the defendant previously "served three separate terms of confinement in a correctional institution as a result of three separate convic-

tions of any crime of violence." I agree with the Court, on the facts of this particular case, that Montone's sentence must be vacated because he had served only two separate periods of actual confinement prior to being convicted a fourth time of a qualifying crime under the statute. I, therefore, concur in the judgment in this case.

I do not, however, share the majority's view that § 643B(b) was intended to afford habitual criminals an opportunity, between periods of actual confinement, for reformation and rehabilitation before a life sentence without parole may be imposed under the statute. The purpose of § 643B, as we recently said in *Hawkins v. State*, 302 Md. 143, 148, 486 A.2d 179 (1985), "is to protect the public from assaults upon people and injury to property and to deter repeat offenders from perpetrating other criminal acts of violence under the threat of an extended period of confinement." In view of these twin objectives of public protection and crime deterrence, I do not believe that the legislature intended—irrespective of the number of separate crimes of violence perpetrated by an offender—that one continuous term of imprisonment under consecutive sentences for separate qualifying offenses would count as but one separate term of imprisonment under the statute. As I see it, the legislative purpose permits the imposing of a life sentence without parole upon a fourth conviction of a crime of violence where the qualifying convictions were coupled with a period of actual confinement separately imposed. Thus, where a sentence is consecutive to an earlier served sentence of imprisonment for a crime of violence, it is separate within the contemplation of the statute, even though the total period of imprisonment under separate and consecutive sentences is continuous. See *Robert Thomas Creighton v. State*, 70 Md.App. 124, 520 A.2d 382 (1987).

Judge ORTH has authorized me to state that he concurs with the views expressed herein.