530 A.2d 1223
**STATE of Maryland**
v.
**Drexel Otto DAVIS.**
No. 142, Sept. Term, 1986.

Court of Appeals of Maryland.

Sept. 21, 1987.

Richard Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellant.

Gary S. Bernstein (Rochlin & Settleman, P.A., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH *, McAULIFFE, and CHARLES E. ORTH, Jr. (Specially Assigned), JJ.

RODOWSKY, Judge.

In *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court held that the sentence of life imprisonment, without parole, imposed under the facts of that case, violated the principle of proportionality embraced within the eighth amendment's prohibition against cruel and unusual punishments. In the case before us Drexel Otto Davis (Davis) was sentenced to life imprisonment, without parole, after having been convicted of housebreaking for at least the fourth, separate time. On appeal to the Court of Special Appeals Davis invoked *Helm*, in addition to questioning whether the State proved the predicate convictions for enhanced punishment. That court vacated Davis's sentence for want of proportionality. *Davis v. State*, 68 Md.App. 581, 514 A.2d 1229 (1986). We granted the State's petition for certiorari, as well as Davis's conditional cross-petition which reasserted his challenges to the predicate convictions. For the reasons set forth below we shall reinstate the sentence.

Davis was sentenced pursuant to Md.Code (1957, 1982 Repl. Vol., 1986 Cum.Supp.), § 643B(b).[1] At the time of Davis's fourth offense, § 643B provided in relevant part:

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. 31, Sec. 3A, he also participated in the decision and adoption of this opinion.

1. All references to statutes are to Md.Code (1957, 1982 Repl. Vol.), Art. 27 unless otherwise noted.

(a) *"Crime of violence"*.—As used in this section, the term "crime of violence" means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; and assault with intent to rape.

The term "correctional institution" includes Patuxent Institution and a local or regional jail or detention center.

(b) *Mandatory life sentence.*—Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any other law to the contrary, the provisions of this section are mandatory.

(c) *Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

We explained the purpose and operation of § 643B(b) in *Montone v. State*, 308 Md. 599, 521 A.2d 720 (1987), saying:

Section 643B(b) is unlike any other habitual offender statute in the country. The Maryland statute requires more than merely "previous" convictions; it requires *separate* convictions. Moreover, the statute's scope is narrowed by the fact that it requires not only that an individual shall have received separate convictions, but that he shall have been sentenced to, and shall have *actually served,* three separate terms of confinement under the jurisdiction of the correctional system. Thus, the picture that emerges is one of a statute specifically designed to identify and target a unique class of people so that they may be permanently exiled from our free society. These are the violent criminals who have been exposed to the correctional system three distinct times, who have refused to conform their conduct to societal standards, and who, instead, have demonstrated violent criminal behavior after each encounter with the correctional system, thus evidencing the futility of any hope for their rehabilitation. [*Id.* at 606, 521 A.2d at 723 (footnote omitted).]

■ A sentence of life imprisonment without parole cannot be imposed under § 643B unless the sequence of commission of a crime of violence, as defined, conviction for that crime, sentence to imprisonment, and service of some part of the term of imprisonment has occurred three times before the fourth conviction for a crime of violence.

When a jury sitting in the Circuit Court for Baltimore County in January 1985 found Davis guilty of daytime housebreaking, the State filed an addendum to the indictment seeking life without parole. The State specified the following prior convictions in Maryland courts:

| | |
|---|---|
| May 31, 1966 – | four cases of "[b]urglary" in Baltimore City, to which Davis pleaded guilty and for which he was sentenced to five years each, with the first three sentences consecutive and the fourth concurrent with the third. |
| October 18, 1966 – | one case of "[b]urglary" in Baltimore County for which Davis, upon a guilty plea, was sentenced to fifteen years to be served concurrently with the sentences for the Baltimore City offenses. |
| August 11, 1975 – | one case of daytime housebreaking in Anne Arundel County for which Davis was sentenced to five years, with service of the last three years suspended. |
| October 28, 1981 – | two cases of daytime housebreaking in Baltimore City for each of which Davis was sentenced to three years, to be served concurrently. |

At the sentencing hearing in the instant case the court concluded that the 1966 convictions in the then Criminal Court of Baltimore (Joseph R. Byrnes, J.) would not be considered as qualifying crimes because the proof did not satisfy the court that Judge Byrnes had sentenced Davis on a count in the indictment which charged a § 643B crime of violence.

The trial judge, however, found that the State proved that the 1966 conviction before the Circuit Court for Baltimore County (John E. Raine, Jr., J.) had been for "burglary," a § 643B crime. Davis has never disputed that his 1975 conviction in Anne Arundel County qualified to enhance punishment. The trial judge also held that the two convictions in 1981 by the Criminal Court of Baltimore (John R. Hargrove, J.) qualified.

The Court of Special Appeals, ruling before *Montone* was decided, did not reach Davis's arguments against the use of the conviction before Judge Raine, because it treated each of the two convictions before Judge Hargrove as predicate offenses. *Davis v. State, supra,* 68 Md.App. at 586–87, 514 A.2d at 1232. Under *Montone* concurrent sentences are but one period of confinement so that Davis's convictions before Judge Hargrove are but one conviction for § 643B purposes.

We shall, therefore, address in part I Davis's arguments concerning the predicate convictions and in part II his claim of unconstitutional disproportionality.

## I

■ In order to bring into focus the attacks on the prior convictions, we synopsize burglary and related crimes in Maryland. The breaking and entering of a dwelling house of another by night with the intent to commit a felony is the felony of burglary under Maryland common law. *See Reagan v. State*, 4 Md.App. 590, 244 A.2d 623 (1968). The penalty, as set by § 29, is up to twenty years. Theft of property or services of the value of $300 or more is a felony and, if the value is less than $300, a misdemeanor. § 342(f). Common law burglary has been enlarged by § 30(a) to include in the felony of statutory burglary an intent to steal goods of less than $300.[2] Daytime housebreaking is proscribed by § 30(b) in the following terms:

> Any person ... who shall be convicted of the crime of breaking a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom, shall be guilty of a felony, and upon conviction thereof, shall be sentenced to the penitentiary for not more than ten years.

## A

■ As to the convictions before Judge Hargrove in 1981, the State demonstrated through criminal informations and docket entries that Davis had pleaded guilty to the third counts in both informations charging that Davis, on a specified date and at a specified place

> unlawfully did break the dwelling house of the said Complainant, at the aforesaid location, with intent to steal ... contrary to the form of the Act of Assembly in such case made and provided ... (Art. 27, Sec. 30b).

---

**2.** Section 30(a) in relevant part reads:
  Every person ... who shall break and enter any dwelling house in the nighttime with the intent to steal, take or carry away the personal goods of another of any value therefrom shall be deemed a felon, and shall be guilty of the crime of burglary.

The first counts of the informations charged that Davis had "unlawfully committed burglary, in the night time."

Davis submits that count III did not charge any crime because it failed expressly to state that the breaking had occurred in the daytime. Relying on *Ayre v. State*, 291 Md. 155, 433 A.2d 1150 (1981), Davis argues that the alleged defect is jurisdictional so that the convictions before Judge Hargrove cannot qualify for § 643B purposes. The Court of Special Appeals held that the time of day of the offense is not an element of the crime under § 30(b), but merely distinguishes it from burglary.

There is no jurisdictional defect. In *Williams v. State*, 302 Md. 787, 490 A.2d 1277 (1985), we reviewed the *Ayre* line of cases and we emphasized that

> every criminal charge must, first, characterize the crime; and, second, it must provide such description of the criminal act alleged to have been committed as will inform the accused of the specific conduct with which he is charged, thereby enabling him to defend against the accusation and avoid a second prosecution for the same criminal offense. [*Id.* at 791, 490 A.2d at 1279.]

These fundamentals were satisfied in the informations before Judge Hargrove. Count I, the form of burglary indictment spelled out in § 31, is legally sufficient to charge either common law or statutory burglary. *See Reagan v. State, supra.* Even if we assume, *arguendo*, that an averment of breaking in the daytime is an element of the crime under § 30(b), an element may be implied. *See Jones v. State*, 303 Md. 323, 493 A.2d 1062 (1985); *Williams v. State, supra.* Count III, construed within the information as a whole and in comparison to count I, charges commission of the crime proscribed by § 30(b); otherwise, count III would be surplusage. If Davis had stood trial before Judge Hargrove and had been acquitted on all counts of the informations, and if the State thereafter had attempted to charge Davis for the same breaking by specifying that it was in the daytime, it is clear that that later charging document would be subject to dismissal on double jeopardy

grounds. Moreover, count III parenthetically advised that § 30(b) was the Act of Assembly to which the breaking was contrary.

**B**

With respect to the conviction before Judge Raine, Davis submits (1) that the State failed to prove that the conviction was for a crime of violence and (2) that his guilty plea was not knowing and voluntary.

**1**

█ The record available concerning the conviction before Judge Raine consists of the docket entries and the transcript of arraignment, but does not include the charging document. Davis was represented by counsel who had represented Davis before Judge Byrnes in Baltimore City. There were eleven cases pending against Davis in Baltimore County and the State elected to proceed with No. 29854. After determining that Davis and his counsel had received a copy of the charges, Judge Raine described them as follows:

29854 says that on October 23, 1965 you broke into the dwelling house of Margaret E. and Raymond Lee Grace, whose address is given as 2523 Windsor Road. It's charged in the second count that you committed the crime of grand larceny by stealing a masonic ring with diamond worth $300, a woman's imitation white gold ring worth a dollar, a zircon ring worth $50, and $836 in cash. The fourth count charges receiving stolen goods, describing those same items, and the third count charges breaking and entry of that dwelling house with the intent to steal goods of any value.

We interpret that description to mean that count I charged daytime housebreaking (§ 30(b)) and count III charged statutory burglary (§ 30(a)).[3] Davis entered a gen-

---

3. Section 31A provides that "[a]ny person who breaks and enters the dwelling house of another is guilty of a misdemeanor...." Judge Raine's description of count I cannot have related to § 31A which was

eral plea of guilty. During Judge Raine's examination of Davis, the latter said that he understood he could get twenty years as a result of his guilty plea. After the prosecutor's statement of facts concerning the offense, the following colloquy took place:

THE COURT: Entry was gained by breaking a basement door in the daytime, Mr. [State's Attorney]?

[STATE'S ATTORNEY]: Well, it was between the hours of 7:30 a.m. and 10:15 p.m. The exact time—

THE COURT: Presumably in the daytime. Is that the story?

DREXEL O. DAVIS: Yes, sir.

THE COURT: This man is now under sentence from Judge Joseph Byrnes in Baltimore City.

[STATE'S ATTORNEY]: Baltimore City.

THE COURT: Well, Judge Byrnes is a man of very excellent judgment. The crimes for which he was convicted and sentenced by Judge Byrnes, ... did they happen about the time of these?

[DEFENSE COUNSEL]: Yes, sir. They were all a series or pattern within the series. The ones for which Judge Byrnes sentenced him actually happened a few weeks prior to the one that he's pleaded guilty to today, and the others that are here today.

THE COURT: How long a span of time did these crimes encompass?

[DEFENSE COUNSEL]: Several months, sir. Prior to that time he had worked steady, not having missed a day of that work for a firm in East Baltimore. He had been in trouble when he was younger with the law as an accessory to a burglary, but for a period of some five to seven years, no trouble at all.

THE COURT: And then all of a sudden—

---

not enacted until more than six years later by Ch. 661 of the Acts of 1973.

[DEFENSE COUNSEL]: Went on a rash of burglaries and—

THE COURT: All of a sudden in the fall of '65 it's a rash of burglaries. How many cases was he involved in in Baltimore City?

[DEFENSE COUNSEL]: Ten.

Judge Raine sentenced Davis to "one sentence of fifteen years" to the Maryland House of Correction commencing April 20, 1966 "so it will be exactly coincidental and concurrent with the sentence imposed by Judge Byrnes."

The question is whether this sentence was for a § 643B crime of violence. For Davis to prevail we would have to conclude that Davis was sentenced for larceny or receiving and not for burglary or daytime housebreaking.

The trial judge concluded that Davis had been sentenced for statutory burglary based on the single sentence of fifteen years, inasmuch as statutory burglary carried up to twenty years under § 30(a). Statutory burglary is a crime of violence. On the other hand Judge Raine commented that the breaking was "presumably" in the daytime. Daytime housebreaking was charged in count I. Although a fifteen year sentence was excessive in relation to the ten year maximum for statutory housebreaking, that excess made no practical difference at the time because Judge Raine did not sentence Davis for any period in addition to the incarceration previously imposed by Judge Byrnes. Nor is it presently material that a fifteen year sentence for housebreaking was excessive. What is presently material is that daytime housebreaking is a § 643B crime of violence.

The transcript of the sentencing does not support an interpretation that Judge Raine sentenced Davis for either larceny or receiving.[4] The colloquy between court and

---

4. Under Md.Code (1957), Art. 27, § 340 larceny of over $100 was a felony punishable by up to fifteen years in the penitentiary or up to ten years in the House of Correction or a jail. Judge Raine specified service of the fifteen years was to be in the House of Correction.

defense counsel characterized Davis's crimes in Baltimore City and in Baltimore County as a "rash of burglaries" which were "all a series or pattern within the series." At the time not even the defense viewed the sentencing simply to be for theft.

### 2

■ Davis further submits that the conviction before Judge Raine cannot be a § 643B predicate because the transcript does not affirmatively reflect that the court advised him of his rights to confrontation and against compulsory self-incrimination. There is no indication that Davis sought either direct appellate or post-conviction review. Davis's position apparently is that the State's proof, *i.e.*, the transcript of the taking of the guilty plea and sentencing, demonstrates on its face that the plea was not knowing and voluntary under *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *State v. Priet*, 289 Md. 267, 276, 424 A.2d 349, 353 (1981), we concluded

> that *Boykin* did not, as a matter of due process, require trial judges to enumerate and obtain a specific on-the-record waiver of the[ ] constitutional rights [against compulsory incrimination, to have a jury, and to confront accusers] "or go through any particular litany, before accepting a defendant's guilty plea." [*Davis v. State*, 278 Md. 103, 114, 361 A.2d 113, 119 (1976).] We said [in *Davis* ] that *Boykin* required only that the record disclose that the plea was entered voluntarily and understandingly in order to accord with due process requirements.

Here, Davis was represented by counsel, who, in the era before overt plea bargaining, got eleven cases against Davis in Baltimore County resolved without Davis's getting any additional prison time. Earlier, with the assistance of counsel, Davis pleaded guilty in four cases before Judge Byrnes. Davis was twenty-eight years old at his 1966 sentencings. According to the probation report in the in-

---

Under Md.Code (1957), Art. 27, § 466 the maximum penalty for receiving was ten years.

 

stant matter Davis's experience with the criminal justice system prior to his guilty plea before Judge Byrnes was as follows:

| Date of Offense | Place of Offense | Offense | Date and Disposition |
|---|---|---|---|
| 12/5/53 | Balto, MD | Larceny-3d count—4 cases | Maximum 4 years— paroled 3/28/55 |
| . . . . | | | |
| 8/15/57 | Balto, MD | Burglary (2) | 9/17/57 Not more than 1 year from 9/15/57; Maximum 2 years |
| 4/21/58 | Balto, MD | Larceny— 4 counts | NMT 4 years |
| 9/19/60 | Balto, MD | Burglary | Guilty 3 years MAC from 11/17/60 |
| 5/16/63 | Balto, MD | RSG | Probation Before Verdict |

The record does not demonstrate that Davis's guilty plea before Judge Raine was involuntary.

## II

In this part we consider the eighth amendment disproportionality argument. The legal positions of the parties present conflicting analyses of the effect of *Helm* on prior Supreme Court holdings, and particularly on *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Rummel had been sentenced to life imprisonment under the Texas recidivist statute upon conviction of obtaining $120.75 by false pretenses, his third felony. He had previously been convicted of obtaining $80 by fraudulent use of a credit card and of passing a forged check in the amount of

§28.36. The Court held (5–4) that the sentence was constitutional. Writing for the dissenters Justice Powell said that the eighth amendment included a proportionality principle, the violation of which could be determined by objective factors including "(i) the nature of the offense . . . (ii) the sentence imposed for commission of the same crime in other jurisdictions . . . and (iii) the sentence imposed upon other criminals in the same jurisdiction." *Rummel v. Estelle, supra*, 445 U.S. at 295, 100 S.Ct. at 1150. In order to demonstrate that courts "can identify and apply objective criteria that reflect constitutional standards of punishment and minimize the risk of judicial subjectivity," the dissent pointed out that its suggested objective factors had been applied in a line of decisions in the United States Court of Appeals for the Fourth Circuit led by *Hart v. Coiner*, 483 F.2d 136 (1973), *cert. denied*, 415 U.S. 983, 94 S.Ct. 1577, 39 L.Ed.2d 881 (1974). *Rummel v. Estelle, supra*, 445 U.S. at 304, 100 S.Ct. at 1154–55.

One of the *Hart v. Coiner* line referred to in the *Rummel* dissent was *Davis v. Davis*, 601 F.2d 153 (4th Cir.1979) (*Davis I*). Davis had been sentenced in Virginia by a jury to forty years imprisonment for possession of less than nine ounces of marijuana. The Fourth Circuit in *Davis I* held that sentence to be unconstitutional. The Supreme Court vacated the judgment in *Davis I* and remanded for reconsideration in light of *Rummel*. In *Davis v. Davis*, 646 F.2d 123 (1981) (*Davis II*) the Fourth Circuit, by an equally divided vote, left intact the District Court judgment which had vacated the state sentence. *Davis II* reached the Supreme Court *sub nom. Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982).

In a *per curiam* opinion the Court held the Virginia sentence was constitutional, with three justices, speaking through Justice Brennan, dissenting. The Court described its holding in *Rummel*, saying:

[W]e distinguished between punishments—such as the death penalty—which by their very nature differ from all other forms of conventionally accepted punishment, and

punishments which differ from others only in duration. This distinction was based upon two factors. First, this "Court's Eighth Amendment judgments should neither be nor appear to be merely the subjective views of individual Justices." [445 U.S.] at 275 [100 S.Ct. at 1140]. And second, the excessiveness of one prison term as compared to another is invariably a subjective determination, there being no clear way to make "any constitutional distinction between one term of years and a shorter or longer term of years." *Ibid.* Thus, we concluded that "one could argue without fear of contradiction by any decision of this Court that for crimes concededly classified and classifiable as felonies, ... the length of the sentence actually imposed is purely a matter of legislative prerogative." [445 U.S.] at 274 [101 S.Ct. at 1139]. Accordingly, we held that Rummel's life sentence did not violate the constitutional ban on cruel and unusual punishment. [*Hutto v. Davis, supra,* 454 U.S. at 373, 102 S.Ct. at 705.]

The dissenters in *Hutto* accused the majority of overstating the holding in *Rummel* and of using a *per curiam* opinion to decide a substantial constitutional issue. *Id.* at 382–83, 102 S.Ct. at 710.

In the term immediately following *Hutto, Helm* was decided by a 5–4 vote. Helm had been sentenced to life imprisonment without parole under the South Dakota recidivist statute which required four felony convictions. Helm had been convicted in 1964, 1966, and 1969 of third degree burglary; in 1972 of obtaining money under false pretenses; in 1973 of grand larceny; and in 1975 of driving while intoxicated for the third time. In 1979 life without parole was imposed when Helm was convicted of uttering a "no account" check for $100.

The Court, through Justice Powell, stated the principle to be

that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily

possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson v. California*, 370 U.S. [660], 667, [82 S.Ct. 1417, 1420–21, 8 L.Ed.2d 758] a single day in prison may be unconstitutional in some circumstances. [*Solem v. Helm, supra*, 463 U.S. at 290, 103 S.Ct. at 3010 (footnote omitted).]

Applying the "objective" factors articulated in his dissent in *Rummel*, Justice Powell for the *Helm* majority called passing a $100 "no account" check " 'one of the most passive felonies a person could commit.' " *Id.* at 296, 103 S.Ct. at 3012 (quoting *State v. Helm*, 287 N.W.2d 497, 501 (S.D. 1980) (Henderson, J., dissenting)). Helm's "prior offenses, although classified as felonies, were all relatively minor," said the Court, and "[a]ll were nonviolent and none was a crime against a person." *Solem v. Helm, supra*, 463 U.S. at 296–97, 103 S.Ct. at 3013. In a footnote the Court explained:

As suggested at oral argument, the third-degree burglary statute covered entering a building with the intent to steal a loaf of bread.... It appears that the grand larceny statute would have covered the theft of a chicken. [*Id.* at 297 n. 23, 103 S.Ct. at 3013 n. 23.]

The South Dakota recidivist statute "authorized life imprisonment after three prior convictions, regardless of the crimes." *Id.* at 298, 103 S.Ct. at 3014. It appeared that " 'Helm could have received a life sentence without parole for his offense in only one other state, Nevada.' " *Id.* at 299, 103 S.Ct. at 3014 (quoting *Helm v. Solem*, 684 F.2d 582, 586 (8th Cir.1982)).

The Court further concluded "that the South Dakota commutation system [was] fundamentally different from the [Texas] parole system" in *Rummel*. 463 U.S. at 300, 103 S.Ct. at 3015. "Parole is a regular part of the rehabilitative process," *id.*, while "[t]he possibility of commutation is nothing more than a hope for 'an *ad hoc*

exercise of clemency.' " *Id.* at 303, 103 S.Ct. at 3016. The Court noted that the liberal policy of good time credits in Texas permitted one serving a life sentence there to become eligible for parole in as little as ten years but that in South Dakota no life sentence had been commuted in over eight years.[5] *Id.* at 302, 103 S.Ct. at 3016.

Four justices dissented for whom Chief Justice Burger wrote. The majority, they said, had ignored *Rummel* which taught that "the Eighth Amendment did not authorize courts to review sentences of *imprisonment* to determine whether they were 'proportional' to the crime," *id.* at 307, 103 S.Ct. at 3018, and which had "categorically rejected the very analysis adopted by the" majority. *Id.* at 308, 103 S.Ct. at 3019.

Footnotes in the majority opinion address the dissenters' criticism. The *Helm* holding was not inconsistent with *Rummel* because Rummel was eligible for a reasonably early parole whereas Helm was sentenced to life without parole. *Id.* at 303–04 n. 32, 103 S.Ct. at 3017 n. 32. Of particular significance to state and lower federal courts is the following statement by the Court:

Contrary to the dissent's suggestions ... we do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court

---

5. In one sense, all sentences to life imprisonment in Maryland are without parole, inasmuch as Md.Code (1957, 1986 Repl. Vol.), Art. 41, § 4–607(b) requires the approval of the Governor for one serving a life sentence to be paroled. In another sense, the Governor is part of the parole process under § 4–607(b) and § 643B's mandate of life without parole cannot limit the Governor's constitutional power to commute sentences. *See* Md. Const. art. II, § 20.

rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate. [*Id.* at 290 n. 16, 103 S.Ct. at 3009–10 n. 16.]

Consequently, the substantive issue of whether Davis's sentence is constitutionally proportionate also involves a question of process, namely, the breadth and depth of the required proportionality review in relation to Davis's sentence and criminal record.

## A

Davis says *Helm* is dispositive because the Supreme Court characterized Helm's crimes, including three prior burglaries, as "relatively minor." Housebreaking under Md.Code § 30(b), however, is a more serious crime than third degree burglary under the South Dakota Code at the time of Helm's convictions. The Maryland crime is committed only when the felon breaks a dwelling. The South Dakota statute in *Helm* could be violated by entering a building which was not a dwelling and, after March 5, 1965, could be violated by entering an automobile with intent to commit petty larceny.[6] *Helm* is not factually dispositive of the instant case.

---

**6.** Prior to the revision of the South Dakota burglary statutes by S.D. Laws 1976, ch. 158 there were two statutes dealing with burglary in the third degree in South Dakota. S.D. Codified Laws Ann. § 22–32–8 (1967) provided:

A person breaking into any dwelling house in the nighttime with intent to commit a crime but under such circumstances as do not constitute burglary in the first degree, is guilty of burglary in the third degree.

Section 22–32–9 of the South Dakota Code provided:

A person breaking or entering at any time any building within the curtilage of a dwelling house but not forming a part thereof, or any building or part of any building, booth, tent, railroad car, vessel, vehicle as defined in § 32–14–1, or any structure or erection in which any property is kept, with intent to commit larceny or any felony, is guilty of burglary in the third degree.

Under South Dakota's former code, §§ 22–32–1 and –3, both first and second degree burglary required that the breaking and entry be of a dwelling in which a human being was then present, either at night

The General Assembly has classified daytime house-breaking in Maryland with offenses such as murder, manslaughter, rape, and robbery with a deadly weapon in the class of "crimes of violence" under § 643B. Although an assault and battery is not an element of daytime housebreaking, the legislature recognized in § 643B the substantial potential for violence inherent in acts of daytime housebreaking. Even if the housebreaker seeks to avoid encountering another person in the dwelling, the housebreaker may be mistaken in believing the dwelling is temporarily unoccupied or the housebreaker may be surprised by the return of an occupant. We need not look beyond our recent cases for examples of crimes which started as house-breakings and which ended as murders for which the death penalty was imposed. *See Johnson v. State,* 303 Md. 487, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Colvin v. State,* 299 Md. 88, 472 A.2d 953 (1984).

*Helm* accords "substantial deference" to legislative sentencing requirements and recognizes that "a reviewing court rarely will be required to engage in extended analysis to determine [constitutional proportionality]." *Solem v. Helm, supra,* 463 U.S. at 290 n. 16, 103 S.Ct. at 3009–10 n. 16. Under that standard the seriousness of daytime house-breaking in Maryland, coupled with § 643B's stringent requirements for the four qualifying offenses, lead us to conclude that an extended proportionality analysis is not required here. Were § 643B(b) to consider as a prior con-

---

for first degree or during the day for second degree. S.D. Codified Laws Ann. §§ 22-32-1; 22-32-3 (1967).

Note 23 to the *Helm* opinion (463 U.S. at 297, 103 S.Ct. at 3013) in which the Court refers to entering a building with intent to steal a loaf of bread clarifies that the Court was utilizing § 22-32-9 when evaluating Helm's prior third degree burglary convictions.

Two of Helm's prior convictions were imposed well after § 22-32-9 had been amended to include entering a vehicle. Thus in *State v. Peck,* 82 S.D. 561, 150 N.W.2d 725 (1967), the defendant committed third degree burglary by participating in taking a nylon jacket from an automobile which had been entered by breaking its vent window while the automobile was parked unattended on a public street.

viction each housebreaking involving a separate victim which was specified in the addendum to Davis's charges and which was found by the trial court to have been a conviction for a "crime of violence," life without parole was imposed on Davis for his *fifth* conviction of a "crime of violence." Even then, the sentence was imposed only after Davis had previously served three separate periods of confinement for "crimes of violence."

After *Helm* life without parole has been upheld, without extended proportionality review, for rape, where the three prior felony convictions, for first degree theft, third degree burglary, and breaking into an automobile, were all imposed on guilty pleas entered on the same day. *See Mosley v. State,* 500 So.2d 108 (Ala.Crim.App.1986). In *Caulder v. State,* 500 So.2d 1362 (Fla.Dist.Ct.App.1987), life imprisonment without possibility of parole for twenty-five years was imposed for an apparent first offense. The court held the sentence to be constitutional because of the crime, a sexual battery on a child under age eleven by a person eighteen years of age or older.

Further, we have traced the origin of *Helm*'s proportionality review factors to the Fourth Circuit's 1973 decision in *Hart v. Coiner, supra.* In *Griffin v. Warden,* 517 F.2d 756 (4th Cir.), *cert. denied,* 423 U.S. 990, 96 S.Ct. 402, 46 L.Ed.2d 308 (1975), that court was asked to invalidate a life sentence imposed in West Virginia for a third offense, grand larceny. The two prior qualifying convictions were for breaking and entering a gasoline station and for burglary of a residence. The offender had never actually been confined in a penitentiary for either of the two prior offenses. Answering an argument based on *Hart,* the Fourth Circuit said that the prior offenses

and grand larceny are serious offenses that clearly involve the potentiality of violence and danger to life as well as property. Whether or not Griffin may be actually deserving of such extreme punishment is not within our province to decide; we hold only that the imposition of a life sentence predicated upon these particular three of-

fenses does not offend the eighth amendment. [*Id.* at 757.]

To the same effect is *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980). The Supreme Court of Appeals of West Virginia had adopted the Fourth Circuit's *Hart* analysis to review sentences imposed under that state's habitual offender statute. Vance had been sentenced to life imprisonment when convicted of breaking and entering, his third felony offense. The opinion describes the prior offenses as crimes against property. Nevertheless, the West Virginia court held:

> We decline to apply the proportionality doctrine in the present case, since we believe the crime of breaking and entering carries the potentiality of violence and danger to life as well as to property. [262 S.E.2d at 432.]

If life with parole is proportionate following the third conviction for the crimes involved in *Griffin* and in *Vance,* it would seem that life without parole is proportionate for a fourth housebreaking conviction, following three separate and unsuccessful attempts at rehabilitation through incarceration.

A sentence of seventy-five years *without* parole was imposed on a thirty-eight year old drug dealer under a federal statute and sustained against eighth amendment attack in the post *Helm* case of *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986). With good time credit that appellant would not have been eligible for release until age eighty-eight. *Id.* at 1026. He contended the sentence was *de facto* one for life without parole. The court noted that the appellant's continuing criminal enterprise involved 1,000 pounds of marijuana and four kilograms of cocaine. The sentence was proportionate for this apparent first conviction. Applying the result in *Rhodes* (but see part II B, *infra*) also supports proportionality in the instant case.

Thus, based on Davis's current and § 643B predicate convictions, on the seriousness of the crime, and on compar-

isons to other sentences adjudicated to be constitutional, we hold that the sentence of life without parole imposed on Davis is not unconstitutionally disproportionate.

### B

When undertaking to apply *Helm* some courts have placed considerable significance on the no parole feature of a life or extended sentence in deciding whether the type of proportionality review performed in *Helm* is required. For example, in *Rhodes* the Fourth Circuit reconciled *Helm* with *Rummel* by concluding that *Helm* "requires an extensive proportionality analysis only in those cases involving life sentences without parole." *Id.* at 1028. Accordingly, a fixed sentence of seventy-five years without parole did not require a full, *Helm* review. Alternatively, the Fourth Circuit held that the sentence in *Rhodes* withstood analysis under *Helm*. All that was required, however, was "a simple matching of the facts of a particular case against the [*Helm*] principles ... without extended discussion." *Id.* at 1028–29.

In the Fifth Circuit availability of parole within a reasonable period of time is a primary consideration in the extent of review to be made. *Moreno v. Estelle,* 717 F.2d 171 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984), held life imprisonment with the possibility of parole to be proportional without a full *Helm* review when the sentence was imposed for assault by threatening with a handgun following a prior conviction for theft of personal property valued in excess of $50 and a prior conviction for possession of drug paraphernalia. On the other hand, sentences totalling 125 years without parole for two armed robberies, involving two victims in a single occurrence, were remanded for extended proportionality review in *Whitmore v. Maggio,* 742 F.2d 230 (5th Cir.1984).

*Seritt v. Alabama,* 731 F.2d 728 (11th Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984), reports an extended proportionality review of a sentence of life without parole, imposed for a first degree robbery, which

had been preceded by a 1973 conviction and by four convictions entered at the same time in 1975, all for violating controlled dangerous substance laws. The sentence was constitutional. *See also People v. Fernandez*, 427 Mich. 321, 398 N.W.2d 311 (1986) (extended analysis; life without parole held constitutional where imposed for an apparent first offense of conspiracy upon hirer of contract murderer whose intended victim survived stabbing).

If, in the case *sub judice*, we assume that *Helm* requires an analysis of the type performed there, testing Davis's life without parole sentence against the criteria applied in *Helm* confirms the constitutionality of the sentence.

The first criterion considers the seriousness of the crime and the harshness of the penalty. We have shown in part II A that the Maryland General Assembly views daytime housebreaking as a serious offense. The evaluation is not unique to this state. While the maximum sentence for housebreaking in Maryland is ten years, that maximum is exceeded in many states for a *first* offense.[7]

In Texas, housebreaking as a first offense may be punished by life. Texas Penal Code Ann. §§ 30.02; 12.32 (Vernon 1974 & 1987 Cum.Supp.). In Ohio the sentence may be twenty-five years. Ohio Rev.Code Ann. §§ 2911.11; 2929.11(B)(1)(a) (Page 1987). The sentence may be twenty years in Arkansas, Georgia, Hawaii, Nebraska, Oregon, Pennsylvania, and Virginia.[8] Fifteen years imprisonment is

---

7. The comparisons in this part II B are made to the statutes of other states under which the crime, however denominated, is completed by the breaking of a dwelling in the daytime with the intent to steal or commit any felony. We have excluded statutes which require violence, or the carrying of a weapon, or the actual presence of a human being on the premises at the time, in order to have the offense committed.

All references to sentences of imprisonment are to imprisonment with the possibility of parole, unless otherwise expressly stated.

8. Arkansas—Ark.Stat.Ann. §§ 41–2002; 41–901(1)(c) (1977 Repl. Vol. & 1985 Cum.Supp.).

Georgia—Ga.Code Ann. § 16–7–1 (1984).

Hawaii—Haw.Rev.Stat. §§ 708–810; 706–661(2) (1985 Repl. Vol.).

the maximum sentence for a first offense of housebreaking in the District of Columbia, Illinois, Michigan, South Dakota, Tennessee, Utah, and West Virginia.[9]

The statutes in Hawaii, Ohio, Oregon, and Texas treat breaking into a dwelling, unaccompanied by violence, as seriously as they treat breaking into another type of structure with a deadly weapon or when violence to a person results. The reason is explained in the practice commentary to Texas Penal Code Ann. (Vernon 1974), § 30.02:

> A separate burglary offense, however, does perform an important criminological function in addition to its trespassory and attempt functions; it protects against intrusion in places where people, because of the special nature of the place, expect to be free from intrusion. The provision of this protection is the rationale underlying Section 30.02. [*Id.* at 142–43.]

A committee comment to the bill which became Ohio Rev.Code Ann. § 2911.11 (Page 1987) puts the concept this way:

> Since aggravated burglary carries the highest degree of risk that someone may be harmed, it is the most serious of the three breaking and entering offenses in the new code. Because the risk of personal harm is emphasized in such offenses, the traditional night-day distinction is done away with, and the type of structure involved

---

Nebraska—Neb.Rev.Stat. §§ 28–507; 28–105 (1985 Reissue).
Oregon—Or.Rev.Stat. §§ 164.225; 161.605 (1985).
Pennsylvania—Pa.Stat.Ann. tit. 18, §§ 3502; 1103 (Purdon 1983).
Virginia—Va.Code Ann. § 18.2–91 (1982 Repl. Vol.).

9. District of Columbia—D.C.Code Ann. §§ 22–1801(b) (1981).
Illinois—Ill.Ann.Stat. ch. 38, para. 19–3; 1005–8–1 (1982 & 1987 Cum.Supp.).
Michigan—Mich.Comp. Laws §§ 750–110 (West 1968 & 1987 Cum. Supp).
South Dakota—S.D. Codified Laws Ann. §§ 22–32–3; 22–6–1 (1979 & 1987 Cum.Supp.).
Tennessee—Tenn.Code Ann. § 39–3–403 (1982 Repl. Vol.).
Utah—Utah Code Ann. §§ 76–6–202; 76–3–203 (1978 Repl. Vol. & 1987 Cum.Supp.).
West Virginia—W.Va.Code § 61–3–11 (1984 Repl. Vol.).

is important only insofar as it is occupied or unoccupied, or is or is not a home. [*Id.* at 140.]

Similarly, the risk of personal harm and the right to be free of intrusion are the concerns underlying the inclusion of daytime housebreaking as a crime of violence in Maryland's § 643B. Consequently, the Court of Special Appeals missed the mark when it gave substantial weight in its proportionality analysis to the trifling value of some of the property taken by Davis in one or more of his housebreakings.

The *Helm* analysis next compares the severity of the sentence under consideration to sentences which can be imposed in the same jurisdiction for more serious crimes. Davis's sentence of life without parole is, indeed, the most severe, noncapital punishment in Maryland law, but it cannot be invoked for housebreaking unless the offense is a fourth *separate* crime of violence under § 643B. From the proportionality standpoint life without parole is mandatory for a fourth offense as to *all* § 643B crimes of violence, if sentencing under that section is invoked in the prosecutor's discretion.

The Court of Special Appeals saw a lack of proportionality indicated by the legislature's failure to include as crimes of violence burglary with explosives, child abuse, third degree sex offense, poisoning water, and drug offenses. Burglary with explosives, proscribed by § 34, is an aggravated form of common law burglary. *See Smith v. State*, 106 Md. 39, 66 A. 678 (1907).[10] It carries a maximum sentence of forty years. § 35. Even if we assume, *arguendo*, that the § 34 offense is excluded from "burglary" in § 643B, a prosecutor need not charge under § 34; instead,

---

**10.** Section 34 provides:
> Any person who breaks and enters, either by day or by night, any building, whether inhabited or not, and opens or attempts to open any vault, safe or other secure place by the use of ... explosive[s], shall be deemed guilty of the felony of burglary with explosives.

if there were three prior, separate, crimes of violence, the state could charge burglary and invoke § 643B.

It is practically impossible to have four "separate" (in the *Montone* sense) convictions for child abuse. A child or children would likely reach age eighteen before the fourth offense, and it is unlikely, in view of the first, second, or third convictions, that anyone would leave a child in the care or custody of the abuser.[11]

Poisoning water, etc., under § 451 is probably a crime against property, *e.g.*, farm animals. If the conduct were directed at a human being, it would seemingly be attempted murder, a § 643B crime of violence.

Section 643B does not include controlled dangerous substance offenses because sentencing for those crimes is subject to special treatment under § 286 (1986 Cum.Supp.). For a *second* drug offense the mandatory minimum sentence is ten years which is without parole, unless the offender can qualify for release after satisfactory adjustment in response to psychiatric treatment at Patuxent Institution.

The lack of inclusion in § 643B of the above crimes rests on a rational basis, is well within the broad deference accorded legislative judgments by *Helm,* and has almost no significance in evaluating the proportionality of Davis's sentence.

Under the third *Helm* criterion we look to the sentencing treatment by other states of repeat offenders who are housebreakers. On that aspect of the case, the Court of Special Appeals concluded:

> Keeping in mind, then, that only from four to six other states would impose a sentence upon Davis identical to

---

**11.** Section 35A(b) (1986 Cum.Supp.) provides:

A parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a child who causes abuse to the child is guilty of a felony and on conviction is subject to imprisonment in the penitentiary not exceeding fifteen years.

the one he received in Maryland, and at least forty-four other jurisdictions would not, we conclude that the sentence does not meet this third criterion. [*Davis v. State, supra,* 68 Md.App. at 594, 514 A.2d at 1235–36 (footnote omitted).]

We cannot accept that the above analysis is a correct application of *Helm* 's third criterion. Sentences in the group of states which take the lead in protecting their citizens from habitual housebreakers do not become constitutionally suspect simply because a majority of states treat habitual housebreakers more leniently. *Rummel* saw no significance to the lead position, saying, "Absent a constitutionally imposed uninformity inimical to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State." *Rummel v. Estelle, supra,* 445 U.S. at 282, 100 S.Ct. at 1143 (footnote omitted). Although *Helm* made a point of the fact that the sentence there imposed was apparently more severe than could have been imposed in any other state, *Solem v. Helm, supra,* 463 U.S. at 300, 103 S.Ct. at 3015, if as the Court of Special Appeals found, four to six states authorize comparable sentencing, we would have no hesitancy in finding that the third *Helm* criterion indicates that Davis's sentence is constitutional.

The Court of Special Appeals concluded that life without parole could have been imposed on Davis in Delaware, Illinois, South Dakota, Wyoming, possibly in Mississippi, and in Nevada if a Nevada court exercised its discretion to impose life without parole. *Davis v. State, supra,* 68 Md.App. at 593, 514 A.2d at 1235. In our comparability review we have assumed that the facts of Davis's prior housebreakings are the bare elements of a § 30(b) violation. On that basis we exclude from the Court of Special Appeals' list Illinois, Wyoming, and Mississippi.[12]

12. Under Illinois Ann.Stat. ch. 38, para. 19–3 (1982 & 1987 Cum. Supp.) residential burglary is a Class 1 felony. The Illinois habitual

For his *third* housebreaking conviction Davis could have been sentenced to life imprisonment in the District of Columbia, Idaho, New York, South Carolina, and West Virginia.[13]  In Utah, Davis could have been sentenced to life imprisonment for his *second* housebreaking conviction.[14] As noted above, a life sentence could have been imposed on Davis in Texas for his *first* conviction.  Given the number of states which permit life imprisonment for three or fewer housebreakings, it is not unconstitutionally disproportionate for a state to provide life without parole for a *fourth* housebreaking.  That has been done in Nevada and South Dakota, as well as in Maryland.[15]

Finally, if *Helm*'s third factor gives some weight to being ranked as the harshest sentence for a particular crime and repeat offender status, that ranking is presently

offender statute, ch. 38, para. 33B-1 (1987 Cum.Supp.), applies to three class X felonies.

Wyo.Stat. § 6-10-201 (1977 Repub. Ed. & 1987 Cum.Supp.) requires a "violent felony."  The "violent felonies" defined in § 6-1-104 include "aggravated burglary," but under § 6-3-301, aggravated burglary includes elements additional to those minimally required under Maryland § 30(b).

The Supreme Court of Mississippi has held that breaking and entering is not a "crime of violence" within the habitual criminals sentencing statute.  Miss.Code Ann., § 99-19-83 (1986 Cum.Supp.).  *See McLamb v. State*, 456 So.2d 743 (Miss.1984).

**13.**  District of Columbia—D.C.Code Ann. §§ 22-1801(b), 22-104(a) (1981).

Idaho—Idaho Code §§ 18-1401, 18-1402, 19-2514 (1979 & 1987 Cum.Supp.).

New York—N.Y. Penal Law §§ 140.20, 70.10 (McKinney 1975 & 1987 Supp.).

South Carolina—S.C.Code Ann. §§ 16-11-312, 17-25-45 (1985 & 1986 Cum.Supp.).

West Virginia—W.Va.Code §§ 61-3-11, 61-11-18 (1984 Repl. Vol.).

**14.**  Utah Code Ann. §§ 76-6-202, 76-8-1001 (1978 Repl. Vol.).

**15.**  Nevada—Nev.Rev.Stat.Ann. §§ 205.060, 207.010.2 (Michie 1986).

South Dakota—S.D. Codified Laws Ann. §§ 22-7-8, 22-6-1(3), 22-32-3 (1979 & Supp.1987).  *See State v. Graycek*, 368 N.W.2d 815 (S.D.1985) ("burglary" in the § 22-1-2(8) definition of "crime of violence" includes burglary in the third degree, and accordingly would include second degree burglary.).

enjoyed by Delaware where life without parole can be imposed for a *third* housebreaking conviction.[16]

Davis's life sentence without parole is not unconstitutional.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR THE ENTRY OF A JUDGMENT AFFIRMING THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY. COSTS TO BE PAID BY DREXEL OTTO DAVIS.

---

16. Delaware—Del.Code Ann. tit. 11 §§ 825, 4214 (1974 rev. ed. & 1986 Cum.Supp.).