627 A.2d 562

**STATE of Maryland**

v.

**Ardell Orlando POLLEY.**

**No. 1857, Sept. Term, 1992.**

Court of Special Appeals of Maryland.

July 13, 1993.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Joseph I. Cassily, State's Atty. for Harford County, Bel Air, on the brief.), for appellant.

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellee.

Argued before GARRITY and BLOOM, JJ., and JAMES S. GETTY, Judge (retired), Specially Assigned.

GARRITY, Judge.

This appeal involves the interpretation of Md.Code Ann. Art. 27, § 286(d) (1957, 1992 Repl.Vol.), of the controlled dangerous substance laws. Appellee/cross-appellant, Ardell Orlando Polley, was convicted by a jury in the Circuit Court for Harford County (Carr, J., presiding) of distribution of cocaine. Because he had previously been convicted of a drug offense, he was sentenced under the mandatory sentencing provisions of Md.Code Ann. Art. 27, § 286(c)(1) (1957, 1992 Repl.Vol.) to a 20–year prison term, the first ten years being without the possibility of parole. The State of Maryland, appellant/cross-appellee, appeals on the allegation that the trial court erred when it refused to impose a mandatory sentence of twenty-five years pursuant to Art. 27, § 286(d). Polley cross-appeals on the sole ground that the trial court erred by allowing the prosecutor to argue facts not in evidence.

## FACTS

According to the agreed statement of facts underlying Polley's latest conviction, while on an undercover assignment on November 21, 1991, Deputy Jack Meckley of the Harford County Sheriff's Department observed Polley standing in front of 211 Perrywood Court in Aberdeen. At approximately 8:30 p.m., Deputy Meckley walked up to Polley and asked for a twenty. Polley went to a mailbox inside 211 Perrywood Court, took out a baggy, placed it on top of the mailbox, came back outside, and told Deputy Meckley to go inside and leave his money on top of the mailbox. Deputy Meckley walked inside, picked up the baggy, put down twenty dollars, and left. The substance in the baggy field-tested positive for cocaine and subsequently tested positive in the laboratory.

After receiving information from Deputy Meckley, Harford County Sheriff's Deputy Gary Smith went to 211 Perrywood Court and checked the identification of various people there, including Polley. Deputy Smith learned Polley's name, ad-

dress, and birth date, and relayed this information to Deputy Meckley.

Polley was indicted on February 19, 1992 in Harford County and found guilty of distribution of cocaine on August 13, 1992. On October 13, 1992, the trial court sentenced him to the jurisdiction of the Division of Corrections for a period of twenty years, pursuant to Art. 27, § 286(c).

Prior to this conviction, Polley had been convicted in Harford County on January 9, 1991, for offenses committed on August 21, 1990 and September 26, 1990, and placed on probation. On September 25, 1991, Polley was arrested on drug charges in Baltimore City and found guilty of possession on January 28, 1992. He was received at the Eastern Correctional Institution on February 28, 1992 to begin service of a two-year sentence on the Baltimore City conviction and credited with time served from January 30, 1992. It is the sentencing of the fourth conviction, described above, that is the subject of this appeal.

## DISCUSSION OF THE LAW

### 1. *Mandatory Sentencing*

■ The State contends that the trial judge erred in refusing to impose the mandatory sentence under Art. 27, § 286(d) for subsequent offenders because Polley had two prior drug convictions and had served a term of at least 180 days, thereby satisfying the conditions precedent for the imposition of sentence under this statute.

Article 27, § 286(d), which applies to third offenses, provides in relevant part:

(d)(1) Any person who is convicted under subsection (b)(1) [1]

---

1. Subsection (b)(1) provides, *inter alia,* that anyone manufacturing or distributing a schedule I or II narcotic drug is guilty of a felony and subject to imprisonment for not more than 20 years and/or a fine of not more than $25,000.

or subsection (b)(2)[2] of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years if the person previously:

(i) Has served as least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and

(ii) Has been convicted twice, where the convictions do not arise from a single incident . . .

(2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with Article 31B, § 11 of the Code.

(3) A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding offense.

The State argues that the plain meaning of the statute permits the imposition of the enhanced sentence upon Polley. Specifically, the State contends that the statute requires only two previous convictions of drug offenses and the serving of 180 days in confinement prior to imposing sentence on a subsequent conviction, and that that requirement was met in the instant case. The State urges that there is nothing in the statute's language requiring that the predicate convictions and the 180–day term of incarceration occur sequentially.

The State also argues that it is clear from the purpose of the controlled dangerous substance laws that the Legislature intended to punish both the defendant who cannot be rehabilitated and the defendant who commits more than one offense.

---

**2.** Subsection (b)(2) provides, *inter alia,* that the penalty for manufacture or distribution of certain non-narcotic schedule I or II drugs is imprisonment for not more than 20 years and/or a fine of not more than $20,000.

Md.Code Ann. Art. 27, § 276(a) and (b) (1957, 1992 Repl.Vol.), provides, in pertinent part:

The General Assembly ... finds and declares that the illegal ... distribution ... of controlled dangerous substances ha[s] a substantial and detrimental effect on the health and general welfare of the people of the State of Maryland. It is the purpose of this subheading to establish a uniform law controlling the ... distribution ... of controlled dangerous substances....

(b) The provisions of this subheading shall be liberally interpreted and construed so as to effectuate its general purpose....

The State urges that a liberal interpretation would lead to the conclusion that the Legislature intended § 286(d) to punish offenders who commit more than two offenses.

Polley responds that the trial judge imposed the proper mandatory sentence under Art. 27, § 286(c) [3], because he had not served a term of confinement of 180 days when the instant offense occurred. At the time of the trial for the instant offense, Polley had served eight months of the two-year sentence imposed for the conviction of January 31, 1992. Polley further alleges that because the conviction of January 31, 1992 postdates the instant offense of November 21, 1991, this conviction does not qualify as a predicate for enhanced sentencing purposes. Finally, Polley argues that the convictions of January 9, 1991 cannot be considered as two convictions, because they were both obtained on the same day and, as a result, he did not have an opportunity to reform.

In his brief, Polley refers to Maryland cases interpreting other subsequent offender statutes. Polley cites *Montone v.*

---

**3.** Art. 27, § 286(c) provides, in pertinent part:

(c)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section, or of conspiracy to violate subsection (b)(1) or (b)(2) of this section shall be sentenced to imprisonment for not less than 10 years if the person previously has been convicted:
(i) Under subsection (b)(1) or subsection (b)(2) of this section; [or]
(ii) Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section.

*State,* 308 Md. 599, 521 A.2d 720 (1987), for the proposition that Md.Code Ann. Art. 27, § 643B(b) (1957, 1982 Repl.Vol., 1986 Cum.Supp.),[4] was intended to punish offenders who do not reform their behavior after prior convictions and punishment.[5]

Polley also refers to *Garrett v. State,* 59 Md.App. 97, 111–18, 474 A.2d 931 *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984), in which this Court was called upon to interpret Md.Code Ann. Art. 27, § 643B(c) (1957, 1982 Repl.Vol., 1982 Cum.Supp.).[6] That statute requires a mandatory minimum sentence for individuals convicted of violent crimes. The statute itself provided that a charging document for the previous offense must be filed prior to the commission of the subsequent offense. *Id.* 59 Md.App. at 115, 474 A.2d 931.

We held in *Garrett* that:

the two convictions serving as the predicate for the enhanced sentence must precede in time the commission of the offense upon which the instant conviction is based. Deter-

---

4. Section 643B(b) provides for a mandatory sentence of life without parole if a defendant has served three separate terms of confinement for the commission of three separate crimes of violence upon the defendant's conviction of a fourth crime of violence.

5. In a footnote, the Court stated that "[f]or illustrations of Maryland's repeat offender statutes intended as punishment vehicles only, *see* ... Md.Code Ann. Art. 27, § 286 (1957, 1982 Repl.Vol.)." *Montone,* 308 Md. at 612 n. 11, 521 A.2d 720. In a concurring opinion, Chief Judge Murphy stated that protecting the public and deterring future crimes with an extended sentence for repeat offenders are also purposes of the enhanced sentence statutes. *Montone,* 308 Md. at 617, 521 A.2d 720.

6. Art. 27, § 643B(c), in 1992, provided in pertinent part:

Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years.... A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

rence, rather than retribution, is the legislative intent we shall infer; and that, as the cited authority makes clear, requires that the instant offense—the one for which the enhanced punishment is imposed—be committed after the two predicate convictions.

*Garrett,* 59 Md.App. at 118, 474 A.2d 931.

Although the cases cited by Polley are persuasive only and are not binding upon this Court, we believe that § 643B, which is narrowly directed towards repeat offenders of violent crimes who, having been exposed to the correctional system three distinct times, have nevertheless failed to rehabilitate but have instead committed a fourth violent crime, is relevant to the issue in the case *sub judice.* The principles underlying the creation of both § 643B and § 286(d) are similar. We interpret that the Legislature intended that the sentences available under them encompass not only punishment objectives, as in § 286(c), but be enhanced because a defendant has committed another offense *after* having served an extended period of incarceration, thereby showing that the defendant has failed to take advantage of the opportunity to reform his or her conduct.

In the area of statutory construction, we have repeatedly stated:

> The cardinal rule in the construction of statutes is to effectuate the intent of the Legislature. In order to do so, a court should consider the object or purpose to be attained by the statute, and the evils or mischief sought to be remedied, and so construe the statute as to carry out and effectuate, or aid in, the general purposes and policies thereof, and suppress the mischief and advance the remedy. If a statute is susceptible of more than one construction, it should if possible, be given that construction which will effectuate or carry out its purpose or object, and it should not be given a construction that would do more than effect the legislative object or purpose. This is especially true when a court is construing a penal statute, which, according to well established case law, is to be strictly construed.

> Strict construction, relative to a penal statute, means a construction favorable to the accused, and against the State. In short, the spirit or intention of the statute should control a court's construction of that statute.

*Collins v. State,* 89 Md.App. 273, 288–89, 598 A.2d 8 (1991), *citing Johnson v. State,* 75 Md.App. 621, 630–31, 542 A.2d 429, *cert. denied,* 316 Md. 675, 561 A.2d 215 (1989) (citations omitted).

This Court recently focused on the construction of Art. 27, § 286(c). In doing so, we also considered what, if any, significant differences were presented as between § 286(c) and (d). We held that the Legislature, by requiring in (d) that previous convictions occur prior to the *commission* of a third offense and not adding the same language to subsection (c), intended in (d) to punish those convicted after repeated incarcerations, and in (c) to punish the multiple offender, regardless of whether he or she had served a period of incarceration. *Gargliano v. State,* 95 Md.App. 593, 622 A.2d 767 (1993).

The legislative history of § 286 supports this position. Prior to 1988, all subsequent offenders were treated equally with respect to sentencing. *Collins v. State,* 89 Md.App. at 292, 598 A.2d 8. In 1988, however, in response to the greatly increased number of repeat drug offenders being prosecuted in Maryland, the Legislature amended Art. 27, § 286 to provide for increased penalties for third and fourth offenses. *Id.* at 291, 598 A.2d 8. Subsections (c), (d) and (e)[7] were added to § 286 at that time. 1988 Md.Laws Ch. 439. Subsections (d) and (e) required the defendant to have been incarcer-

---

7. Subsection (e) provides, in part:

(e)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but in any event, not less than 40 years if the person previously has served 3 separate terms of confinement as a result of 3 separate convictions....

Subsection (e) does not contain a provision similar to subsection (d)(3) defining a "separate occasion."

ated for a previous drug-related conviction, while subsection (c) did not. *Gargliano,* 95 Md.App. at 602, 622 A.2d 767.

A 1988 Bill Analysis by the Senate Judicial Proceedings Committee of subsections (c), (d) and (e), summarized these provisions as follows:

1.  Second conviction—imprisonment for not less than 10 years.
2.  Third conviction—imprisonment for not less than 25 years, provided that the person has served at least one term of confinement for at least 180 days for violating either § 286 or § 286A. . . .
3.  Fourth conviction—imprisonment for not less than 40 years, provided the person has served 3 separate terms of confinement as a result of 3 separate convictions for violations involving a narcotic drug or PCP.

It is clear from the summary that the Legislature not only was well aware of the absence of any qualifications for a second offense, but of the addition of qualifications for third or fourth offenses. *Gargliano,* 95 Md.App. at 603, 622 A.2d 767. Furthermore, the purpose of the 1988 Md.Laws Ch. 439 was to require:

> certain mandatory minimum penalties for subsequent convictions of violations relating to controlled dangerous substances under certain circumstances; specifying that, for the purpose of certain subsequent offender penalties, certain offenses are prior offenses; prohibiting the suspension of certain penalties; providing for the construction of this Act; and generally relating to mandatory minimum penalties for subsequent convictions concerning specific controlled dangerous substances. (Underscoring omitted.)

The statement that "for the purpose of *certain* subsequent offender penalties, certain offenses are prior offenses" indicates that the Legislature intended to make a distinction between second offenses and third and fourth offenses. *Gargliano,* 95 Md.App. at 603, 622 A.2d 767. This language implies that for certain subsequent offender penalties, *i.e.,* third and fourth offenses, there is a specification concerning what consti-

tutes a prior offense, whereas there is no such specification for second offenses.[8] The purpose of the 1988 Act, therefore, supports an interpretation requiring sequentiality in § 286(d) and (e).

The Court of Appeals in *Jones v. State*, 324 Md. 32, 38, 595 A.2d 463 (1991), observed, in dicta, that "by imposing the 180 day minimum, the legislature was ensuring that those who received the enhanced punishment had been accorded a fair chance at rehabilitation in the prison system and had not responded." We agree.

We believe that the Legislature intended to make a distinction between second offenses and third and fourth offenses, that distinction being to punish multiple offenders in § 286(c) and recidivist behavior in 286(d) and (e). If the Legislature intended § 286(d) and (e) merely to inflict more severe punishment upon someone who is a persistent offender, it would have enhanced an individual's sentence anytime he or she had previous convictions. Rather, in § 286(d), the Legislature not only required that before being sentenced as a subsequent offender an individual shall have received two previous convictions, it also required that the individual shall have served a term of 180 days confinement in a correctional institution before committing the third offense. We cannot conclude otherwise.

---

**8.** In *Gargliano v. State*, 95 Md.App. at 604 n. 10, 622 A.2d 767, Judge Bell further analysed the distinctions between subsections (c), (d) and (e) as follows:

In *Collins v. State*, 89 Md.App. 273, 291–4 [598 A.2d 8] (1991), we noted other distinctions between subsection (c) and subsections (d) and (e)—only second offenders are eligible for drug treatment in lieu of a mandatory sentence. This distinction might explain why the Legislature sought to impose more stringent requirements for third and fourth offenses and not for second offenses. Penalties for third and fourth convictions are much harsher than for a second offense, and three- and four-time offenders are not eligible for drug treatment in lieu of a mandatory sentence. Since those second offenders who are deemed eligible for rehabilitation may be given drug treatment in lieu of a mandatory sentence, the more stringent standard for second offenders would serve no purpose.

The policy behind requiring sequentiality, which is that it is reasonable to impose a harsher sentence when a convicted person does not take advantage of the opportunity to reform, but instead commits another offense, is, in our opinion, sound. Because Polley had not served the required 180 days of incarceration for the January 31, 1992 conviction before he committed the November 21, 1991 subsequent offense, he was properly sentenced under § 286(c) rather than § 286(d).

### 2. *Argument of Facts Not in Evidence*

█ In his cross-appeal, Polley contends that remarks made by the prosecutor during the rebuttal phase of the State's closing argument require reversal. Specifically, Polley argues that the prosecutor improperly suggested that the defendant had a prior record of drug arrests, which facts were not in evidence. As held in *Booth v. State,* 327 Md. 142, 193, 608 A.2d 162 (1992), "[t]he permissible scope of closing argument is a matter left to the sound discretion of the trial court. The exercise of that discretion will not constitute reversible error unless clearly abused and prejudicial to the accused." *Id., citing Booth v. State,* 306 Md. 172, 210–11, 507 A.2d 1098 (1986); *see Thomas v. State,* 301 Md. 294, 316, 483 A.2d 6, *cert. denied,* 470 U.S. 1088, 105 S.Ct. 1856, 85 L.Ed.2d 153 (1985); *Wilhelm v. State,* 272 Md. 404, 413, 326 A.2d 707 (1974).

In closing argument by the defense, counsel argued the issue of reasonable doubt by pointing to possible contamination of evidence at the police laboratory to account for positive drug test results of the substance purchased from Polley and to the possible misidentification of Polley by the undercover police officer. In attempting to demonstrate to the jury what evidence the State did not have, defense counsel stated, "You have no evidence that Mr. Polley was ever arrested with drugs on his person."

The State in rebuttal said:

PROSECUTOR: I could have and I didn't object to one of the statements that Defense Attorney made, and that is she said something like and if there's a dispute we can read it back in the record, that the State didn't have any informa-

tion concerning any arrest that the Defendant had with regard to drugs.

DEFENSE COUNSEL: Objection your Honor.

PROSECUTOR: And I'm not going to ...

THE COURT: Overruled, go ahead.

PROSECUTOR: I'm not going to get into the specifics even though the Judge has permitted me to continue, but I would suggest to you that that is not a proper statement that the Defense Attorney made because she has to realize that whether I had information or didn't have information ...

DEFENSE COUNSEL: Objection your Honor.

PROSECUTOR: I wasn't allowed to get that in.

THE COURT: Approach the bench please.

At the bench, there was disagreement as to whether defense counsel's statement that "You have no evidence that Mr. Polley was ever arrested with drugs on his person," referred to the fact that the police found no drugs on Polley's person when he was arrested, as the defense contended, or whether it referred to the subject of prior arrests, as the State contended. The court admitted it could not specifically recall what defense counsel had said, but warned the State that it was "treading on very dangerous ground" and to "exercise great caution in addressing this." The State responded that it would "get off of this line of argument" and was permitted to continue with its closing argument.

Ideally, the State should have objected to the mention of facts not in evidence, namely whether Polley had any prior arrests on his record, when the lack thereof was arguably alluded to by defense counsel during her closing argument. The State did not do so, whether by choice or omission, but instead raised the issue during its rebuttal. While doing so bordered on being improper, from the standpoint of substantial fairness we believe that, under the circumstances, the prejudice to the defendant was insufficient to render a mistrial appropriate. It appeared to the State that defense counsel had himself referred to facts not in evidence regarding prior arrests, and had thereby "opened the door" on the subject.

The State was seeking to correct a possible erroneous impression created by the defense, or at least to place that evidence in perspective. "Summation provides counsel with an opportunity to creatively mesh the diverse facts of trial, meld the evidence presented with plausible theories, and expose the deficiencies in [opposing counsel's] argument." *Henry v. State,* 324 Md. 204, 230, 596 A.2d 1024 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992). Whether a particular comment during closing argument exceeds these limits is dependent on the particular facts of a given case. *Wilhelm v. State,* 272 Md. at 415, 326 A.2d 707. In pointing out the deficiency in defense counsel's argument, the State exercised caution and abandoned the subject when advised to do so by the court. Under the circumstances, we hold that the prosecutor did not exceed permissible limits of closing argument.

Polley further asserts that the court compounded any error by failing to take additional action after defense counsel objected to the remarks and the bench conference was held. We disagree.

While on the merits we would have no difficulty in finding no prejudicial error, *Wilhelm v. State,* 272 Md. at 412–13, 326 A.2d 707, a more direct answer to the contention is procedural. *Ball v. State,* 57 Md.App. 338, 358, 470 A.2d 361 (1984). When Polley objected to the State's argument that there may have been evidence of prior arrests that it was not permitted to introduce, the court overruled the objection. After the bench conference, nothing more was requested. Polley did not ask for a curative instruction or move for a mistrial. The trial judge certainly was not going to have declared a mistrial *sua sponte,* without knowing whether Polley wanted one or not. *Ball v. State,* 57 Md.App at 359, 470 A.2d 361; *United States v. Jorn,* 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

Before this Court will decide that the trial court abused its discretion by not granting a mistrial, we would have to find clear and egregious prejudice to the defendant mandating us to reverse the conviction. *Leak v. State,* 84 Md.App. 353, 358,

579 A.2d 788 (1990).  The Court in *Jones v. State,* 310 Md 569, 580–81, 530 A.2d 743 (1987), citing *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), noted that reversal is required only when a prosecutor's remarks were "focused, unambiguous and strong, and so prejudiced a specific right that to allow them to go uncorrected would deprive the accused of fundamental fairness."  As stated by this Court in *Leak v. State, supra,* any improper conduct or remarks made by the State during a prosecution would have to be a "direct and contributing factor that resulted in substantial prejudice" to the defendant.  84 Md.App. at 358, 579 A.2d 788; *Wilhelm v. State,* 272 Md. at 429, 326 A.2d 707.

In the case at bar, the State's brief reference to prior arrests did not, in the lower court's opinion, prejudice Polley to the extent that any further action was called for.  During the trial, there was ample evidence presented of Polley's guilt, including testimony by the undercover officer making the buy from him, testimony of the arresting officer, and the results of the laboratory tests on the drugs recovered.  It can only be a matter of speculation that the jury was unduly influenced by the comments of the prosecutor.

The prosecutor was admonished that he would be wise to avoid further mention regarding any prior arrests during his closing argument, and he did so.  Further, the jury was instructed that the remarks of counsel during closing argument were not to be considered as evidence.  As the Court of Appeals stated in *Wilhelm,* "In the environment of the trial, the trial judge is peculiarly in a superior position to judge the effect of any of the alleged improper remarks."  272 Md. at 429, 326 A.2d 707.  Discerning no error or abuse of discretion in the court's decision not to offer a curative instruction or grant a mistrial, we affirm.

*JUDGMENT AFFIRMED;  COSTS TO BE PAID ONE– HALF BY HARFORD COUNTY AND ONE–HALF BY AP- PELLEE/CROSS–APPELLANT.*