951 A.2d 875

**Shantese Norena STEVENSON**

v.

**STATE of Maryland.**

**No. 1483, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

July 1, 2008.

Becky Kling Feldman (Nancy S. Forster, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb (Douglas F. Gansler, Attorney General, on the brief), Baltimore, for appellee.

Panel: BARBERA, WOODWARD, CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

WOODWARD, J.

Appellant, Shantee Norena Stevenson, a.k.a, Shantese Norena Stevenson, was charged with two counts of robbery and related offenses. In the Circuit Court for Baltimore County, she pleaded guilty to one count of robbery and the State entered a *nolle prosequi* on the remaining charges. The circuit court sentenced appellant to a mandatory term of ten years' incarceration in accordance with Maryland Code (2002, 2007 Cum.Supp.), § 14–101(e) of the Criminal Law Article. Appellant subsequently filed a Motion to Correct an Illegal Sentence, which the circuit court denied. Appellant noted a timely appeal from that denial and presents one question for our review:

> Did the circuit court err in denying appellant's Motion to Correct an Illegal Sentence when appellant had not previously been sentenced to a term of incarceration for a crime of violence?

We conclude that the circuit court erred in denying appellant's motion; therefore, we vacate her sentence and remand the case for a new sentencing hearing.

## BACKGROUND

On May 3, 2004, the date appellant entered her guilty plea to robbery in this case, the State filed a notice in accordance with Maryland Rule 4–245 [1] that it intended to proceed against

---

1. Maryland Rule 4–245(c) provides:

appellant as a repeat violent offender under § 14–101 of the Criminal Law Article (hereinafter "C.L."). The State's notice provided, in part:

> The Defendant has been convicted of an offense defined as a crime of violence pursuant to Maryland Annotated Code, Article 14–101, and has served a term of confinement in [a] correctional institution, for that conviction, namely:
>
> On 4/3/92, Defendant was convicted in Baltimore City, before the Honorable Judge J. Bothe of Robbery. Defendant was sentenced to the Baltimore City Detention Center for a period of two (2) months.
>
> The Defendant, if convicted, in case 03CR4405 [the robbery case to which appellant entered the guilty plea], of a crime of violence, will receive imprisonment for the term allowed by law, but not less than ten (10) years, none of which may be suspended.

When appellant entered her guilty plea, she did not contest that she had been convicted in 1992 of robbery in Baltimore City. She also understood that she would be sentenced as a repeat offender to a mandatory ten-year term. Following acceptance of the plea, the trial court imposed the mandatory ten-year sentence under C.L. § 14–101(e), which states, in relevant part:

> (e) Second conviction of crime of violence.—(1) On conviction for a second time of a crime of violence committed on or after October 1, 1994, a person shall be sentenced to imprisonment for the term allowed by law, but not less than 10 years, if the person:

---

(c) Required notice of mandatory penalties. When the law prescribes a mandatory sentence because of a specified previous conviction, the State's Attorney shall serve a notice of the alleged prior conviction on the defendant or counsel at least 15 days before sentencing in circuit court or five days before sentencing in District Court. If the State's Attorney fails to give timely notice, the court shall postpone sentencing at least 15 days unless the defendant waives the notice requirement.

The timeliness of the State's notice is not before us.

(i) has been convicted on a prior occasion of a crime of violence, including a conviction for a crime committed before October 1, 1994; and

(ii) served a term of confinement in a correctional facility for that conviction.

(2) The court may not suspend all or part of the mandatory 10–year sentence required under this subsection.

In C.L. § 14–101(a)(9), robbery is defined as a crime of violence.

In appellant's Motion to Correct an Illegal Sentence, she again agreed that she had been "convicted on a prior occasion" within the meaning of C.L. § 14–101(e)(1)(i). Appellant also indicated that in the 2004 Baltimore County case, she had pleaded guilty "to one count of robbery with the understanding that she would be sentenced as a subsequent offender for a second crime of violence, pursuant to [C.L.] § 14–101(e)(1)." Appellant claimed, however, that her 1992 Baltimore City conviction resulted in a suspended sentence and not a sentence of two months, as alleged by the State in its notice and at her plea hearing. According to appellant, the only time she served in relation to the 1992 Baltimore City conviction was the forty-five days she spent on pretrial detention. Appellant thus claimed that she had not served "a term of confinement in a correctional facility for that conviction" as required by C.L. § 14–101(e)(1)(ii). She referred the circuit court to *Melgar v. State*, 355 Md. 339, 734 A.2d 712 (1999), in support of her position.

On August 2, 2006, a hearing was held on appellant's motion, and counsel reiterated the arguments presented in the written motion and supporting memorandum of law. Counsel thus asserted that appellant had a prior conviction for robbery, but that she had not served a term of confinement resulting from that conviction because all of the five-year sentence had been suspended. Counsel conceded that appellant had served forty-five days of pretrial incarceration, but claimed that under *Melgar*, that period of incarceration was

not served in a correctional facility for the 1992 Baltimore City conviction. Counsel presented the court with several exhibits concerning the 1992 Baltimore City conviction, including: (1) the docket entries; (2) the sentencing guidelines worksheet; (3) the order of probation; and (4) the Division of Parole and Probation Supervision Summary. All these documents indicated that, for the 1992 Baltimore City conviction, appellant had received a five-year sentence, all of which was suspended. As a result, counsel asserted, the second prong of C.L. § 14–101(e)(1) had not been satisfied.

The prosecutor responded that *Melgar* addressed repeat drug offenders under Art. 27, § 286, now codified at C.L. § 5–609, and that it did not apply to repeat offenders under C.L. § 14–101. The prosecutor agreed, however, that for the 1992 Baltimore City conviction, appellant had been "given a sentence of suspend all but time served...."

In denying appellant's motion, the circuit court stated:

I'm sure we have a judge at the Court of Special Appeals who can assign a law clerk down there that can spend copious amounts of time researching this problem and make a determination. But I'm not going to do it. Because I think the sentence was fair and reasonable under all of the circumstances, given the fact that this defendant served a prior conviction for robbery, then goes out and commits another one.

The motion to correct an illegal sentence is going to be denied, which would put it in the appropriate position for appeal to the Court of Special Appeals.

## DISCUSSION

Appellant claims that the circuit court erred in failing to determine whether she had served a term of confinement in a correctional facility for her 1992 Baltimore City conviction. She refers us to the evidence presented at the hearing on the motion to assert that she was not sentenced to any term of confinement in that case and that she was merely credited for time spent in pretrial custody. Appellant also cites to *Melgar*

and contends that her case falls squarely within its holding, *i.e.*, that credit for pretrial incarceration cannot constitute a term of confinement for her 1992 Baltimore City conviction.

██ Here, the circuit court denied appellant's motion, but declined to address the merits of her claim. Before this Court, appellant raises the same issue that she presented to the circuit court; therefore, despite the circuit court's avoidance of that issue, it is properly before us. *See* Md. Rule 8–131(a) (generally, an appellate court will not decide issues not "raised in or decided by the trial court"); *Curry v. Dept. of Pub. Safety & Corr. Servs.*, 102 Md.App. 620, 632, 651 A.2d 390 (1994) (addressing issue raised in the circuit court but not decided by the circuit court), *cert. granted*, 338 Md. 252, 657 A.2d 1182 *cert. dismissed as improvidently granted*, 340 Md. 175, 665 A.2d 1038 (1995); *Supervisor of Assessments of Howard County v. Scheidt*, 85 Md.App. 154, 158 n. 1, 582 A.2d 563 (1990) (issue not discussed or determined in the Tax Court or circuit court was properly before appellate court because the argument had been made in the pleadings before the circuit court and, thus, in accordance with Maryland Rule 8–131(a), had been raised in the circuit court).

██ "Where the General Assembly has required or permitted enhanced punishment for multiple offenders, the burden is on the State to prove, by competent evidence and beyond a reasonable doubt, the existence of all of the statutory conditions precedent for the imposition of enhanced punishment." *Jones v. State*, 324 Md. 32, 37, 595 A.2d 463 (1991). An erroneously imposed mandatory sentence is an illegal sentence. *See Bowman v. State*, 314 Md. 725, 738, 552 A.2d 1303 (1989); *see also Sutton v. State*, 128 Md.App. 308, 327–28, 738 A.2d 286 (1999) (although no objection raised at sentencing, allegation that mandatory sentence was illegal due to State's failure to establish prior conviction beyond a reasonable doubt was addressed on appeal). Further, the fact that appellant was sentenced to the mandatory term of incarceration pursuant to a guilty plea would not alter the illegality of the sentence imposed. *See Holmes v. State*, 362 Md. 190, 195–

96, 763 A.2d 737 (2000) (per curiam) (stating that "[a] defendant cannot consent to an illegal sentence").

In this case, we are asked to construe the meaning of C.L. § 14–101(e)(1)(ii). "The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature." *Collins v. State,* 383 Md. 684, 688, 861 A.2d 727 (2004). "The legislative intent of a statute primarily reveals itself, through its very own words." *Derry v. State,* 358 Md. 325, 335, 748 A.2d 478 (2000) (citations omitted). "[W]e view the words of a statute in ordinary terms, in their natural meaning, in the manner in which they are most commonly understood." *Id.; see also Deville v. State,* 383 Md. 217, 223, 858 A.2d 484 (2004) ("Ordinary and popular understanding of the English language dictates interpretation of terminology within legislation."). "If the words of a statute are clear and unambiguous, our inquiry ordinarily ends and we need investigate no further, but simply apply the statute as it reads." *Gillespie v. State,* 370 Md. 219, 222, 804 A.2d 426 (2002). In *Chow v. State,* 393 Md. 431, 443, 903 A.2d 388 (2006), the Court of Appeals explained:

> "In construing the plain language, '[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.' " *Price v. State,* 378 Md. 378, 387[, 835 A.2d 1221] (2003); *County Council v. Dutcher,* 365 Md. 399, 416–17[, 780 A.2d 1137] (2001). Statutory text 'should be read so that no word, clause, sentence or phrase is rendered superfluous or nugatory.' *Collins [v. State],* 383 Md. 684, 691[, 861 A.2d 727] (2004) (quoting *James v. Butler,* 378 Md. 683, 696[, 838 A.2d 1180] (2003)). The plain language of a provision is not interpreted in isolation. Rather, we analyze the statutory scheme as a whole and attempt to harmonize provisions dealing with the same subject so that each may be given effect. *Deville,* 383 Md. at 223[, 858 A.2d 484]; *Navarro–Monzo v. Washington Adventist,* 380 Md. 195, 204[, 844 A.2d 406] (2004).

(Quoting *Kushell v. Dept. of Natural Res.*, 385 Md. 563, 576–77, 870 A.2d 186 (2005)).

 "If a statute has more than one reasonable interpretation, it is ambiguous." *Twine v. State*, 395 Md. 539, 550, 910 A.2d 1132 (2006); *see also Price v. State*, 378 Md. 378, 387, 835 A.2d 1221 (2003) ("[B]efore judges may look to other sources for interpretation, first there must exist an ambiguity within the statute, i.e., two or more reasonable alternative interpretations of the statute.") When "the statutory language is ambiguous, we resolve that ambiguity in light of the legislative intent, considering the legislative history, case law, and statutory purpose." *Moore v. State*, 388 Md. 446, 453, 879 A.2d 1111 (2005). Further, "[a]n ambiguity in a criminal penal statute, in accordance with the rule of lenity, ordinarily is to be construed against the State and in favor of the defendant." *Webster v. State*, 359 Md. 465, 481, 754 A.2d 1004 (2000).

With these principles in mind, we have no difficulty concluding that the plain language of C.L. § 14–101(e)(1)(ii) requires the same conclusion as that reached by the Court of Appeals in *Melgar v. State*, 355 Md. 339, 734 A.2d 712 (1999). In that case, Melgar was convicted of possession of cocaine with intent to distribute and related offenses. *Id.* at 342, 734 A.2d 712. The trial court sentenced him to twenty-five years' incarceration without the possibility of parole pursuant to the enhanced penalty provision contained in Article 27, § 286(d) of the Maryland Code, *id.*, which then provided in relevant part:

(d)(1) A person who is convicted under subsection (b)(1) or subsection (b)(2) of this section or of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section shall be sentenced to imprisonment for the term allowed by law, but, in any event, not less than 25 years if the person previously:

(i) Has served at least 1 term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of this section or § 286A of this article; and

(ii) Has been convicted twice, where the convictions do not arise from a single incident:

1. Under subsection (b)(1) or subsection (b)(2) of this section;

2. Of conspiracy to violate subsection (b)(1) or subsection (b)(2) of this section;

3. Of an offense under the laws of another state, the District of Columbia, or the United States that would be a violation of subsection (b)(1) or subsection (b)(2) of this section if committed in this State; or

4. Of any combination of these offenses.

(2) Neither the sentence required under paragraph (1) of this subsection nor any part of it may be suspended, and the person may not be eligible for parole except in accordance with Article 31B, § 11 of the Code.

On appeal, Melgar argued that the State had not established one of the statutory predicates for imposing the enhanced penalty, *i.e.,* that he had served at least one 180–day term of confinement in a correctional institution as a result of a conviction for a previous violation of Art. 27, § 286 or § 286A. 355 Md. at 342, 734 A.2d 712. Melgar had served 248 days concurrently for two prior convictions before he was released on probation. *Id.* at 345, 734 A.2d 712. When he was sentenced for those offenses, however, the trial court gave him credit for 107 days that he had spent in pretrial detention because he had been unable to post bond. *Id.* at 344–45, 734 A.2d 712. As a result, Melgar alleged that he had served only 141 days "as a result of" a previous conviction and not the 180 days required under § 286(d)(1)(i). *Id.* at 345, 734 A.2d 712. The Court of Appeals agreed. *Id.* at 353, 734 A.2d 712.

The Court explained:

[W]e conclude that the 180–day previous term of confinement required under § 286(d) as a statutory predicate for imposing a twenty-five year mandatory sentence without parole may not be satisfied by cumulating a term of confinement of less than 180 days served post-conviction under the Division of Correction along with however many days have been credited for time spent in pretrial detention. This is true even though all time was served in relation to the same

offense for which a defendant was previously charged and sentenced under § 286.

The plain language of the statute "as a result of a conviction" is clear and unambiguous. Time spent in pretrial detention does not come within the 180–day requirement mandated by § 286(d) because such time is not "as a result of a conviction" but merely the consequence of a defendant's not posting bail.

*Id.* at 348, 734 A.2d 712.

The Court of Appeals further noted that this interpretation of § 286(d)(1)(i) was "consistent with the Legislature's desire to accord to a defendant a true opportunity and fair chance at rehabilitation before being sentenced under the enhanced penalty statute." *Id.* at 351, 734 A.2d 712. The Court explained that "[m]any opportunities for rehabilitation that are bestowed upon inmates who have been sentenced to incarceration generally are not available to pretrial detainees." *Id.* Accordingly, without access to all the available programs, there was "the lesser potential for reducing recidivism in pretrial offenders." *Id.* at 352, 734 A.2d 712. As an example, the Court pointed out that a federally funded program called High Intensity Drug Trafficking Area, which was "designed specifically to treat chronic substance-abusing, criminal offenders," was "routinely limited to sentenced inmates and is not usually made available to pretrial detainees." *Id.* at 352, 734 A.2d 712. Most notably, such a restriction was in place where Melgar spent his pretrial detention. *Id.*

The Court of Appeals added:

In sum, the public policy goal of affording criminal offenders a meaningful chance at rehabilitation before subjecting them to mandatory, enhanced penalties and the incomplete availability of rehabilitative services to pretrial detainees underscore the purposefulness of the Legislature's choice of the phrase "as a result of conviction." In our view, this distinct statutory phrase reflects the legislative intent that time in pretrial detention neither suffice nor in any degree supplement the statutory prerequisite of a minimum 180–

day term of prior confinement for imposing an enhanced penalty upon a three-time drug offender under § 286.

We therefore conclude that [Melgar's] 107 days of pretrial detention were not "as a result of conviction" and that cumulating those days to reach the statutory 180–day predicate under § 286(d)(1)(i) is inconsistent with both the plain language and legislative purpose of the statute as a whole. Because [Melgar] had not served at least one term of confinement of at least 180 days in a correctional institution as a result of a conviction of a previous violation of § 286, he was improperly sentenced.

*Id.* at 352–53, 734 A.2d 712.

Under the plain language of C.L. § 14–101(e)(1)(ii), appellant had to have served a term of confinement for her 1992 Baltimore City conviction before the mandatory ten-year term could be imposed. As explained in *Melgar*, appellant did not serve a term of confinement "for that conviction." Rather, she served only a term of pretrial incarceration because she could not, for whatever reason, post bond.

The State notes that, under Art. 27, § 286(d)(1)(i), Melgar could only be sentenced to the enhanced penalty if he had "served at least 1 term of confinement of at least 180 days in a correctional institution *as a result of* a conviction of a previous violation of this section or § 286A of this article[.]" (Emphasis added.) In contrast, C.L. § 14–101(e)(1)(ii) requires that appellant had "served a term of confinement in a correctional facility *for that* conviction." (Emphasis added.) The State also asserts that a time-served sentence meets the requirements of C.L. § 14–101(e)(1)(ii) because, in contrast to Art. 27, § 286(d)(1)(i), it does not require a specific period of time spent in confinement prior to the imposition of an enhanced sentence. The State thus claims that the reasoning of *Melgar* does not apply. We disagree.

In *State v. Polley*, 97 Md.App. 192, 194, 627 A.2d 562 (1993), the defendant was convicted of distribution of cocaine and sentenced as a repeat offender under Art. 27, § 286(c) to twenty years' imprisonment, the first ten to be served without

the possibility of parole. On appeal, the State asserted that the trial court erred in failing to impose the mandatory sentence of twenty-five years' imprisonment without the possibility of parole under Art. 27, § 286(d) because Polley had two prior convictions and had served a term of at least 180 days. *Id.* at 195, 627 A.2d 562. Polley asserted that he had not served a term of confinement of 180 days when the most recent offense occurred, and referred this Court to cases interpreting other subsequent offender statutes, including Art. 27, § 643B, from which C.L. § 14–101 was derived without substantive change. *Id.* at 197–98, 627 A.2d 562. In considering those cases, we wrote:

> Although the cases cited by Polley are persuasive only and are not binding upon this Court, we believe that § 643B, which is narrowly directed towards repeat offenders of violent crimes who, having been exposed to the correctional system three distinct times, have nevertheless failed to rehabilitate but have instead committed a fourth violent crime, is relevant to the issue in the case *sub judice.* **The principles underlying the creation of both § 643B and § 286(d) are similar.** We interpret that the Legislature intended that the sentences available under them encompass not only punishment objectives, as in § 286(c), but be enhanced because a defendant has committed another offense *after* having served an extended period of incarceration, thereby showing that the defendant has failed to take advantage of the opportunity to reform his or her conduct.

*Id.* at 199, 627 A.2d 562 (first emphasis added). Accordingly, we may rely on the Court of Appeals' analysis of Art. 27, § 286(d) in *Melgar.*

Further, C.L. § 14–101 provides, in relevant part:

> (c) Fourth conviction of crime of violence.—(1) Except as provided in subsection (g) of this section, on conviction for a fourth time of a crime of violence, a person who has served three separate terms of confinement in a correctional facility **as a result of** three separate convictions of any crime of violence shall be sentenced to life imprisonment without the possibility of parole.

(2) Notwithstanding any other law, the provisions of this subsection are mandatory.

(d) Third conviction of crime of violence.—(1) Except as provided in subsection (g) of this section, on conviction for a third time of a crime of violence, a person shall be sentenced to imprisonment for the term allowed by law but not less than 25 years, if the person:

(i) has been convicted of a crime of violence on two prior separate occasions:

1. in which the second or succeeding crime is committed after there has been a charging document filed for the preceding occasion; and

. 2. for which the convictions do not arise from a single incident; and

(ii) has served at least one term of confinement in a correctional facility **as a result of** a conviction of a crime of violence.

(2) The court may not suspend all or part of the mandatory 25–year sentence required under this subsection.

(3) A person sentenced under this subsection is not eligible for parole except in accordance with the provisions of § 4–305 of the Correctional Services Article.

(e) Second conviction of crime of violence.—(1) On conviction for a second time of a crime of violence committed on or after October 1, 1994, a person shall be sentenced to imprisonment for the term allowed by law, but not less than 10 years, if the person:

(i) has been convicted on a prior occasion of a crime of violence, including a conviction for a crime committed before October 1, 1994; and

(i) served a term of confinement in a correctional facility **for that** conviction.

(2) The court may not suspend all or part of the mandatory 10–year sentence required under this subsection.

(Emphasis added.)

To draw the distinction between the language "as a result of" and "for that" advocated by the State would lead to absurd results because a defendant whom the State sought to have sentenced as a three- or four-time violent offender under C.L. § 14–101(c) and (d), which contain the "as a result of" language, would not be considered to have served a term of confinement for a prior offense if the defendant had served only a term of pretrial incarceration. Yet, according to the State, a period of pretrial incarceration would bring the defendant within C.L. § 14–101(e), which contains the language "for that conviction." Moreover, the General Assembly clearly intended the same result for offenders falling within each subsection. It used the different language in subsection (e), which requires imposition of a mandatory penalty upon a second conviction for a violent offense, because only one prior conviction would trigger the application of this subsection. The General Assembly thus referred to the term of confinement "for that conviction."

We also disagree with the State's argument that a term of pretrial incarceration meet the requirements of C.L. § 14–101(e)(1)(ii), because the General Assembly did not require, in contrast to Art. 26, § 286(d)(1)(i), that a specific period of time have been spent in confinement prior to imposition of the mandatory penalty. To adopt the State's position would require us to ignore the plain language of the statute, which requires that appellant's prior term of confinement be served "for that [1992 Baltimore City] conviction."[2]

The State also claims that appellant's

---

**2.** In *Melgar,* the Court of Appeals supported its interpretation of the language of Art. 27 § 286(d)(1)(i) by reference to drug treatment programs that may be available to defendants following their convictions, but that are not available to those in pretrial detention. 355 Md. at 351, 734 A.2d 712. Because there is a close connection between drugs

arguments are offset by the off result that occurs if one is not given credit for time served pre-trial in the context of enhanced sentencing. Indeed, it is likely that accepting [appellant's] interpretation would require judges to ignore credit for time served in their discretionary sentencing decisions and could lead to imposition of longer sentences simply in order to facilitate the possibility of subsequent mandatory sentences.

In general, credit for time served must be given. Md.Code (2001, 2007 Cum.Supp.), § 6–218(b) of the Criminal Procedure Article states, in part:

> (b) In general.—(1) A defendant who is convicted and sentenced shall receive credit against and a reduction of the term of a definite or life sentence, or the minimum and maximum terms of an indeterminate sentence, for all time spent in the custody of a correctional facility, hospital, facility for persons with mental disorders, or other unit because of:
>
> (i) the charge for which the sentence is imposed; or
>
> (ii) the conduct on which the charge is based.

In *Toney v. State,* 140 Md.App. 690, 692, 782 A.2d 383 (2001) (citations omitted), this Court stated that Art. 27, § 638C(a), the precursor to § 6–218 of the Criminal Procedure Article,

> mandates that when an individual is in custody before trial and is subsequently convicted on the charge for which he or she was held, the time spent in custody prior to the imposition of sentence must be credited against the sentence

and crime, the treatment needed by a *violent offender* may include drug rehabilitation that, as explained in *Melgar,* may not be available to a pretrial detainee. *See generally State v. Stewart,* 368 Md. 26, 34–35, 791 A.2d 143 (2002) (" 'Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways: (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.' ") (Quoting *Harmelin v. Michigan,* 501 U.S. 957, 1002, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (internal quotation omitted in *Stewart* )).

imposed. The intent of the statute is to insure that a defendant receives as much credit as possible for time spent in custody, consistent with constitutional and practical considerations.

See also *Wilson v. Simms*, 157 Md.App. 82, 94, 849 A.2d 88 (2004) ("In 2001, the legislature enacted § 6–218 of the Crim[inal] Pro[cedure] Article, without substantive change from § 638C of Article 27. In 1974, the legislature enacted § 638C of Article 27 for the purpose of providing that, under certain circumstances, persons shall receive credit against their sentences for any time spent in custody.") (Citations omitted). A trial court thus *must* give a defendant credit for a period of pre-trial incarceration on the charge for which he or she was held; our holding in the case *sub judice* does not suggest otherwise.[3]

In sum, appellant did not serve a term of confinement for her 1992 Baltimore City conviction within the meaning of C.L. § 14–101(e)(1)(ii). The circuit court erred in denying appellant's Motion to Correct an Illegal Sentence.

**SENTENCE VACATED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE COUNTY FOR A NEW SENTENCING HEARING. COSTS TO BE PAID BY BALTIMORE COUNTY.**

---

**3.** Indeed, when a court imposes a sentence, the act of granting credit for pretrial incarceration does not transform such pretrial incarceration into a "term of confinement" within the meaning of C.L. 14–101(c)–(e).